## BENNETT *v.* STATE.

Opinion delivered December 17, 1923.

1. GRAND JURY—PRESENCE OF OUTSIDER DURING DELIBERATIONS.—Regulation of the subject whether other persons may be present in the grand jury room during the time when the ˙jurors are deliberating or voting on, a charge, *held* within the power of the Legislature.

2. STATUTES—IMPLIED REPEAL.—Repeals by implication are not favored, and are never allowed unless there is an irreconcilable repugnancy between the later and the older statute.

3. GRAND JURY—PRESENCE OF STENOGRAPHER.—Crawford & Moses' Dig., § 2996, providing that "no person, except the prosecuting attorney and the witnesses under examination, are permitted to be present while the grand jury is examining a charge, and no person whatever shall be present while the grand jury is deliberating or voting on a charge," is in conflict with and repealed by the later act of 1917, No. 42, in so far as the latter act authorizes the presence of the court stenographer for the grand juries of the Seventeenth Judicial District to be present "in the grand jury room at all times."

4. JURY—SELECTION FROM BYSTANDERS.—Under Crawford & Moses' Dig., § 6837, providing for summoning bystanders, it was not an abuse of discretion, where the regular and special panels are exhausted, to order the sheriff to go into certain townships and summon 25 men to serve as jurors.

5. HOMICIDE—INSTRUCTION—DRUNKENNESS AS DEFENSE.—In a prosecution for involuntary manslaughter where the killing was the result of defendant recklessly, wantonly and carelessly driving his automobile while drunk, since intent is not an ingredient of the crime, it was not error to refuse to charge that defendant was not guilty if he was so crazed by drink "that he did not know what he was doing."

Appeal from Arkansas Circuit Court, Northern District; *George W. Clark,* Judge; affirmed.

*George M. Chapline* and *Joseph Morrison,* for appellant.

*J. S. Utley,* Attorney General, *John L. Carter, Wm. T. Hammock* and *Darden Moose,* Assistants, for appellee.

WOOD, J. This is an appeal from a judgment sentencing the appellant to nine months' imprisonment in the State Penitentiary upon a conviction of involuntary manslaughter. The testimony for the State tended to prove that on the 15th day of December, 1922, about

three o'clock p. m., the appellant was operating and in control of an automobile on the public highway in Arkansas County; that he was drunk, and, while running the car at a speed of from twenty-five to thirty-five miles an hour, he came in contact with one Ed Miller, who was driving his team hitched to a wagon loaded with rice. Miller at the time was walking by the side of his team, and the collision threw him under his wagon, the wheels of which ran over his neck, causing his death. The testimony on behalf of the appellant tended to prove that he was unconscious at the time, as the result of voluntarily drinking what he thought was whiskey.

1. The appellant alleges three grounds for the reversal of the judgment. First, that the court erred in refusing to quash the indictment. The record shows that Joe Melton, the official stenographer of the grand jury of the Seventeenth Judicial Circuit, was in the grand jury room when the grand jury had under consideration the charge against appellant embraced in the present indictment. He testified that he took down the testimony of the witnesses. They had voted many times, and, when he saw they were going to vote the last time, he left the room and went down to get the prosecuting attorney to prepare the indictment. He requested the foreman of the jury that they should vote the indictment while he was absent. When he came back with the indictment, the foreman informed him that they had voted on it while he was away. The testimony of the foreman of the jury shows that the stenographer was absent when the final vote was taken, but they had voted many times possibly while he was present. Section 2996 of Crawford & Moses' Digest provides: "No person except the prosecuting attorney and the witnesses under examination are permitted to be present while the grand jury is examining a charge, and no person whatever shall be present while the grand jury is deliberating or voting on a charge."

Act No. 42 of the Acts of 1917, page 202, provides for a court stenographer for the grand juries of the

Seventeenth Judicial District of the State of Arkansas. After describing his duties in detail in §§ 2 and 3, § 3 concludes with the following language: ''And said stenographer's presence in the grand jury room shall be allowed at all times, and he shall be subject to the same penalties as are now or may hereafter be prescribed by law for divulging any of the secrets or proceedings of the grand juries.'' This court has declared in several cases, in effect, that, under the provisions of the general law (§ 2996, *supra*), the presence of any one in the grand jury room other than the jurors themselves, while they are deliberating or voting on a charge, would be ground for quashing the indictment on that charge. See *Bennett* v. *State,* 62 Ark. 516; *Richards* v. *State,* 108 Ark. 89; *Tyner* v. *State,* 109 Ark. 145. In these cases this court, in effect, negatively at least, has held that it is within the power of the Legislature to prescribe that no one shall be present in the grand jury room during the time when the jurors are deliberating or voting on a verdict. It is equally within the constitutional power of the Legislature to declare that parties other than the grand jurors may be present while the jurors are deliberating or voting upon a charge. The whole subject is within the power of the Legislature, and there is no constitutional restraint upon such power. The wisdom and policy of such legislation therefore must prove itself to the Legislature. It is impossible to escape the conclusion that the language of special act No. 42 of the Acts of 1917 repeals, by necessary implication, the provision of the general law above quoted on the subject, as applicable to the Seventeenth Judicial District.

The presence of the stenographer in the grand jury room ''at all times'' necessarily excludes the idea that his presence cannot be allowed during the time the grand jury are deliberating or voting on a charge. The intent must be derived from the language used, and its meaning is too plain to admit of any other construction. The special act expressly repeals all laws or parts of laws

in conflict therewith. Repeals by implication are not favored, and are never allowed unless there is an irreconcilable repugnancy between the later and the older statutes. *Bank of Blytheville* v. *Willis,* 76 Ark. 296, and cases there cited; *Bartlett* v. *Willis,* 147 Ark. 374. See also *Bank of Blytheville* v. *State,* 148 Ark. 504. Here there is a direct and irreconcilable conflict between the provisions of the general law and the provisions of the special act as applied to the Seventeenth Judicial District. So, the latter repeals the former, in so far as it applies to that district. The court therefore did not err in refusing to quash the indictment because of the presence of the stenographer while the grand jury was deliberating on the charge in the indictment.

2. Section 6837, Crawford & Moses' Digest, provides that, if the jury for the trial of any case cannot be obtained from the panel of petit jurors, bystanders shall be summoned, as the court may direct, to complete such jury. After the regular and special panels selected by the jury commissioners had been exhausted in the effort to impanel the trial jury, the court ordered the sheriff to go to McFall and Keaton Townships and summon twenty-five men to serve as jurors, and directed him "to get good men possessing the qualifications as petit jurors."

Appellant contends that this direction of the trial court was reversible error. This court has held that an accused person is not entitled to have any particular jurors try his case, and that his rights are fully protected if he secures a panel summoned under the orders of the court, who, at the time they are called to answer as to their qualifications, are found to be duly qualified. *McCain* v. *State,* 132 Ark. 501. We have also held that it was not reversible error to refuse to direct the sheriff, at the instance of the accused, to summon as bystanders persons present in the courtroom while the trial jury is being formed. *Pate* v. *State,* 152 Ark. 553.

In the last case, construing the statute (§ 3145) which requires the court to order the sheriff to summon bystanders to complete the jury after the regular panels have been exhausted, we held "that by 'bystanders' is meant electors possessing the qualifications of jurors, and in their selection the body of the county is open and available to the sheriff." To be sure, the same rules for the selection of bystanders as jurors are applicable to the State as well as to the defendant. But the direction of the court that the sheriff summon jurors from some particular township or townships is not in conflict with any provision of the law requiring an impartial jury to be selected. The test, after all, is as to whether the jurors selected anywhere in the county are found, on their *voir dire,* to possess the necessary qualifications as jurors. In the exigencies of trials the presiding judge must necessarily be vested with a wide discretion in the matter of impaneling the jury, after the panels provided by statute are exhausted, so as to expedite the business of the court. The presumption must be indulged always, until the contrary is shown, that the trial court did not abuse its discretion in the manner of impaneling the jury. For aught that appears in this record to the contrary, it may have been exceedingly important to have directed the sheriff to summon a jury from that portion of the body of the county where jurors could most likely be obtained, who had not formed or expressed an opinion on the merits of the case, because of residence remote from the immediate scene of the alleged crime. There was therefore no error in the ruling of the court in the matter of directing the sheriff to summon special veniremen to complete the trial panel.

3. The appellant prayed the court to instruct the jury as follows: "If you find from the evidence in this case that the defendant drank what he thought was whiskey, but the effects upon the defendant were of such nature as to paralyze his mind and was contrary to the effect of whiskey, and that he was crazed by said dope

to that extent that he did not know what he was doing, then and in that event the defendant would not be guilty of the crime charged, even though you find he did, while operating his automobile, strike and knock the deceased under a wagon, which ran over and killed him." The court rejected the prayer, to which ruling the appellant duly excepted. The intent to commit the offense of involuntary manslaughter of which the appellant was convicted is not an ingredient of the crime. Involuntary manslaughter is, as its name implies, an involuntary killing done without any intent to kill, but in the commission of some unlawful act, or in the improper performance of some lawful act. *Tharp* v. *State,* 99 Ark. 188; *Trotter* v. *State,* 148 Ark. 466.

The testimony of the appellant shows that he "voluntarily drank the dope" which produced his temporary besotted and unconscious condition. No effort is made to prove that the appellant, at the time of the killing, was afflicted with any disease of the mind, either permanent, temporary, or periodical, such as delirium tremens, *mania a potu,* or dipsomania. *Casat* v. *State,* 40 Ark. 511. It appears that the killing was the result of reckless, wanton, and careless driving of his automobile, while the appellant was unconscious, as the result of beastly intoxication caused by his own voluntary drinking. Voluntary drunkenness was no excuse for the crime. The court did not err in refusing appellant's prayer for instruction. See *Bowen* v. *State,* 100 Ark. 232; *Madding* v. *State,* 118 Ark. 506; *Alford* v. *State,* 110 Ark. 302; *Carter* v. *State,* 135 Ark. 169.

There is no reversible error in the record. Therefore let the judgment be affirmed.

McCULLOCH, C. J., (dissenting). The general statutes of this State (Crawford & Moses' Digest, § 2996) provide that "no person whatever shall be present while the grand jury are deliberating or voting on a charge," and this court has held that the presence of any person, other than members of the grand jury, at the

time of deliberating or voting on a charge, affords sufficient grounds for quashing an indictment. *Bennett* v. *State,* 62 Ark. 516; *Richards* v. *State,* 108 Ark. 89; *Tiner* v. *State,* 109 Ark. 138.

The statute now under consideration applies only to one of the judicial circuits of the State, and authorizes the employment of a stenographer for the assistance of the prosecuting attorney and the grand jury. The section referred to in the majority opinion prescribes the duty of the stenographer to attend the meetings of the grand jury for the purpose of taking down, and, when necessary, transcribing, the testimony of witnesses who testify before that body, and in the concluding portion of this section it is provided that "the stenographer's presence in the grand jury room shall be allowed at all times." The rule of construction that repeals by implication are not favored and will not be declared, unless there is an irreconcilable repugnance between the provisions of two statutes, or unless a later act is found to cover the entire subject of an earlier act, is so well settled that it scarcely needs citation of authorities to support it. The rule was announced at a very early date in the decisions of this court, and has continued down to the present. The question for determination, then, in the construction of this statute is whether or not there is any irreconcilable repugnance between this statute, which applies only to one circuit, and the general statute of the State, which contains a plain provision to the effect that no person shall be present in the grand jury room during the deliberation or voting upon an indictment. The meaning of the words in the latest statute, "allowed at all times," must be tested by the purpose for which they are used and the connection in which they are used. The purpose of this statute was to provide assistance to the grand jury and to make it the duty of the stenographer to attend the meetings of the grand jury for the purpose of taking down the testimony of witnesses. The stenographer has nothing to do with the deliberations of the jury or the voting upon the ques-

tion of an indictment. He has no duty to perform during those proceedings, and therefore the framers of the statute could not have had it in mind that he was to be allowed to be present in the grand jury room at any other time except when performing his duties. Then the words "at all times" must be deemed to clearly refer to the times when the prosecuting attorney is commanded to attend the meetings of the grand jury to perform his duties, and not to any other occasion, when there is a direct command from the general statute that no person shall be present, that is to say, while the grand jury is deliberating or voting.

It seems clear to my mind that, under familiar rules of interpretation, it ought to be held that this statute does not repeal by implication the general statute on the subject so as to permit the stenographer of the Seventeenth Circuit to be present in the grand jury room while the jury is deliberating or voting upon an indictment. There can scarcely be found a single reason why the stenographer should be permitted to be present during the deliberations of the grand jury, any more than other persons, especially since the general statute forbidding the prosecuting attorney from being present is not affected by the new statute. Under this statute, as now interpreted by the court, the prosecuting attorney, a sworn officer of the law, elected by the people to prosecute public offenses, is denied permission to attend the sittings of the grand jury while they are deliberating or voting, and yet the stenographer is allowed to be present at those times.

I dissent, therefore, from the conclusion of the majority, and am authorized to say that Mr. Justice HART concurs with me in the expression of these views.