HULEN *v*. STATE.

Criminal 4080

Opinion delivered April 18, 1938.

*A. M. Bradford, John Fogleman* and *Wils Davis,* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

HUMPHREYS, J. Information was filed by the prosecuting attorney in the circuit court of Crittenden county against appellant jointly with Jim Miller, Woody Crawford and Sam Thompson, charging them with grand larceny on the 15th day of March, 1937, by taking, stealing and carrying away one black cow, the property of Georgia Ross, with the unlawful, willful and felonious intent then and there to deprive the true owner of her property and of the value thereof. It was also alleged in the information that a conspiracy was entered into between appellant and those jointly charged with him to commit the offense and that pursuant to said conspiracy, scheme, design and plan to steal and carry away said animal they did steal and carry away the cow pursuant to the conspiracy and that the stealing of this cow was one of a series of thefts of cows and was a part of the conspiracy, scheme and design on the part of said parties to take and steal cows in said county and state.

Appellant filed a motion to quash the information on the ground that it alleged the commission of two separate and distinct crimes, that is to say, the crime of conspiracy to commit a felony and the crime of grand larceny, and asked that the state be required to elect on which crime it would try appellant. The court overruled this motion over appellant's objection and exception. Seven other informations of like nature and effect were filed against appellant and others jointly for stealing cattle in said county and state and for the purposes of trial

the seven other informations were consolidated with this particular case and were tried together, resulting in dismissals of three of them, verdicts of not guilty in four of them and a verdict of guilty in this case in which appellant was adjudged to serve a term of two years in the penitentiary as a punishment therefor. Appellant has duly prosecuted an appeal from the judgment of conviction herein to this court. The first assignment of error argued by appellant for a reversal of the judgment is that the evidence is insufficient to sustain the verdict of conviction because, he alleges, the evidence of the state's main witness, Woody Crawford, an alleged accomplice of appellant, was not corroborated.

Woody Crawford testified, in substance, that he helped Jim Miller and others steal about forty head of cattle around about Hughes from different parties who owned them and that appellant directed him in some instances to steal the cattle, and that in other instances he knew about them stealing the cattle. In reference to the cow which was stolen from Georgia Ross, who lived on the Brinkley place, he testified as follows:

"I remember a black milk cow stolen off the levee on Mr. H. M. Brinkley's place, which was the property of Georgia Ross. I helped steal that cow. It was stolen on Thursday night some time in March of this year. The cow was butchered. Mr. Jim Miller sent word for me to come to appellant's place, and they got in the car, that is, appellant and Mr. Jim Miller, and I got in the back end. When we got to the levee I fell off on the right-hand side and they went on. Before they stopped, appellant said: 'See those two cows—we want those two.' Appellant was driving the car and pointed out two cows to me. Appellant picked up a .22 rifle that day where he stopped on the levee at a tent where Mr. Wofford and Miss Susie Raney lived. Mr. Jim Miller handed me a pistol and I walked over to the river and stayed until sundown. When dark came Jim Miller and Sherman loaded her on a truck and brought her back to Hughes. We carried her back to appellant's barn where she was butchered and hung up in appellant's ice box."

Georgia Ross testified that about the first of March of said year a black cow was stolen from her; that the morning before she was stolen that night she was putting her out on the levee to graze when appellant and another man came along and offered to buy her and told her that if she would bring the cow to Hughes he would buy her or trade her a jersey heifer for the cow; that appellant and the man with him were going toward Mr. Hugh Brinkley's place that morning and late that evening they came back by her place and that her cow was stolen that night.

Josie Jones testified that she saw these two men going up to Mr. Brinkley's in the morning and saw them coming back late that afternoon and that the cow was stolen that night.

Hugh Brinkley testified, in substance, that Georgia Ross reported the loss of her cow in March; that he saw appellant down around his place shortly before and after the cow was stolen and that two cows had been stolen from him, one about the time Georgia Ross' cow was stolen and the other about two months after that time.

J. W. Wofford testified that he and Susie Raney were living in a tent on the levee and that he saw appellant and the darky going up the levee in the direction of Crittenden county toward the Brinkley place; that they stopped at his place and appellant got a rifle which had been left there for him and Susie Raney testified to the same effect.

Mrs. Omar Curlin, wife of the jailer of Crittenden county, testified that after Miller had been put in jail appellant came to the window of the jail and said to Miller: "If I give you money to go buy cattle and you split the money and steal them cows I can't help that, and that lets me out." And said that she heard appellant say to Miller that he would mortgage any property that he had to get him released from jail or out of the penitentiary, and that if he did go to the penitentiary it would not take more than $500 or $600 to get him out.

A. W. Finley testified that in May, 1937, one of his cows was stolen and that later he found the cow in

appellant's lot at Hughes; that he talked to appellant about the cow and appellant claimed to have raised it; that appellant would not give her up at that time but later did so; that while he was there he noticed Mr. Craft's cow which had also been stolen and appellant claimed to have raised her too, but later appellant surrendered the cow to Mr. Craft.

The facts detailed above were substantial and corroborated the confession of Woody Crawford that he and appellant stole the cow, or at least to warrant the jury in so finding, and the court did not err in refusing to instruct a verdict of not guilty. It may be added that there is no dispute that the cow was butchered and placed in appellant's ice box just as other cattle which had been stolen had been found in the possession of appellant. It is true appellant made an explanation for having these stolen cattle and especially this one in his possession. It was clearly a matter for the jury to determine the reasonableness and sufficiency of the explanation given by appellant as to why he had the stolen property in his possession. This court has held many times that the unexplained possession of property recently stolen constituted legally sufficient evidence to warrant a conviction either of receiving stolen property or of larceny. *Sons* v. *State*, 116 Ark. 357, 172 S. W. 1029; *Mays* v. *State*, 163 Ark. 232, 259 S. W. 398. The possession of this stolen cow after she had been butchered by appellant, if the jury did not believe his explanation of how he came into the possession of her, was a strong circumstance corroborating the statement of Woody Crawford, the accomplice, that he stole the cow for and under the direction of appellant.

Appellant next contends for a reversal of the judgment because the court permitted the sheriff to select a special venire after the regular panel of the jury had been exhausted. It seems from the record that in making up the jury the court anticipated that a jury could not be gotten out of the regular panel and issued a special venire to the sheriff who summoned the special panel during the time the jury was being made up. Objection was made that the special panel should not have been summoned until the regular panel had been exhausted. When

the objection was made the court directed the sheriff to summons a special venire after the regular panel was exhausted. The sheriff seems to have summoned the same jurors on the second special venire that he had served pursuant to the first venire. Appellant contends that after the regular panel had been exhausted it was the duty of the sheriff to serve bystanders from which to complete the jury for the trial of the case, citing Pope's Digest, § 8340, which is to the effect that after a regular panel of the jury shall be exhausted then bystanders shall be summoned from which to complete the jury for the trial of the case. The statute does not mean that the sheriff must serve somebody in or about the court room. A "bystander" means a qualified juror who may be summoned by the sheriff from the county at large. *Bennett v. State,* 161 Ark. 496, 257 S. W. 372; *Sullivan v. State,* 163 Ark. 11, 258 S. W. 643. This court said in the case of *Sullivan v. State, supra,* that "the trial court has wide discretion in summoning special veniremen to avoid unnecessary delay and expense and the fact that special jurors were summoned before the trial began was not error" and further said that "the accused has no right to the services of a particular juror, but only to a trial before a fair and impartial jury, and the fact that several jurors were excused and that their places were taken by jurors from a special venire was not grounds for objection."

Objection was made to the court allowing the sheriff to summons jurors on the special venire which it issued on the ground that he was interested and would summons jurors favorable to the state. We have read the record carefully and find nothing in it tending to show that the sheriff was prejudiced against appellant or that he would favor the state in selecting special jurors. Although it is true that the court may, for specific cause, designate some person other than the sheriff to summon jurors, there is nothing in the record to show that the court abused its discretion in not doing so.

Appellant next argues that the court erred in not sustaining its motion to elect whether the state would try him on the charge of grand larceny or for a con-

spiracy entered into to commit grand larceny, claiming that the information charged two separate offenses. We think reading the information as a whole it charged the crime of grand larceny jointly against appellant, Jim Miller, Woody Crawford and Sam Thompson under and by virtue of an agreement between them to commit the offense. We do not think it charged or intended to charge two separate and distinct offenses, one for grand larceny and one for conspiracy to commit grand larceny. We do not think by charging that a conspiracy was entered into to commit the crime means more than that the offense of grand larceny was committed pursuant to a conspiracy or an agreement or as one of a number of offenses which was committed pursuant to a conspiracy, scheme and design on the part of appellant and the others to take and steal a cow in said county of the state. We think it was wholly unnecessary to allege the conspiracy or attempt to prove it and that the general charge of grand larceny was sufficient without any charge of conspiracy to commit the offense. Of course, having stated in the information that the crime was committed pursuant to a conspiracy, it was proper to introduce evidence of the statements of the conspirators pertaining thereto and leading up to the commission of the offense and also to admit statements of the conspirators one to the other in the presence of each other even after the crime had been committed. This court said in the case of *Nelson* v. *State,* 190 Ark. 1027, 88 S. W. 2d 519, that: "The general rule that an act done or declaration made by one of two conspirators in the furtherance of the conspiracy, though in the other's absence, may be shown in evidence against the other."

Appellant contends that the court erred in not granting him a new trial on account of newly-discovered evidence. We do not think that the newly-discovered evidence could or would have changed the verdict of the jury. It was to the effect that a witness by the name of Wofford who had testified early in the case and gone to his home in another county would testify that he was present when appellant picked up the gun at Wofford's tent and that Woody Crawford was not there at the time.

The other newly-discovered evidence was to the effect that a Mr. Bradford after the trial would swear that Woody Crawford told him that the more he could tell on Hulen, appellant, the easier it would be on him. This alleged newly-discovered testimony consisted in affidavits made by Wofford and a man by the name of Crouse. We are unable to say that the testimony might have changed the result, and hence cannot say that the trial court abused its sound discretion in refusing to grant a new trial on the ground of newly-discovered evidence.

No error appearing, the judgment is affirmed.