SLAYTOR *v.* STATE.

Opinion delivered November 24, 1919.

1.  ASSAULT WITH INTENT TO KILL—INTENT—MALICE.—An intention to kill may be conceived on the instant; malice, while necessary, may be implied. Implied malice may rise out of the circumstances of an assault.

2.  SAME—SAME—SAME.—Malice and intent to kill will be inferred where the accused advanced upon witness remarking that he would "cut his heart out," held an open knife in his hand, and did in fact cut witness two or three times.

3.  SAME—SAME—SAME.—It is error to charge the jury that defendant is guilty of an assault with intent to kill, if he assaulted a certain person with a knife with intent to take his life, but the error is rendered harmless, when the court, in other instructions, told the jury that defendant would not be guilty if he acted in necessary self-defense, nor if the assault were under provocation sufficient to make the passion irresistible.

4.  SAME—SAME—SAME—SELF-DEFENSE.—One who is the aggressor can not invoke the doctrine of self-defense until he has, in good faith, endeavored to withdraw from the conflict.

Appeal from Bradley Circuit Court; *Turner Butler,* Judge; affirmed.

*D. A. Bradham* and *B. S. Herring,* for appellant.

1. The evidence shows that the cutting was the result of a mutual combat without the slightest malice or intent to kill on part of appellant. Blankenship was the initial mover in the whole matter, he used the first insulting language, struck the first blow and threw brickbats at Rufus Slaytor as he ran off. There is no proof of malice or intent to kill; both are necessary, 88 Ark. 579.

2. It was error to give instruction No. 1 for the State. 82 Ark. 64; 88 Ark. 579. The instructions given are abstract, as there was no evidence upon which to base them and they assume that a homicide had been committed. No. 1 is not the law of this case. None of the instructions cure the vice of these abstract ones and Nos. 1 and 20 were palpably prejudicial.

*John D. Arbuckle,* Attorney General, and *Robert C. Knox,* Assistant, for appellee.

1. Malice and intent to kill were both shown by the evidence. Malice may be express or implied. 96 Ark. 52; 82 *Id.* 64; 117 *Id.* 432.

2. Taking all the instructions together, they contain no error and justify a conviction. 82 Ark. 64; 93 *Id.* 409; 62 *Id.* 307; 99 *Id.* 580. On the whole case there is no error.

HUMPHREYS, J. Appellant was indicted, tried and convicted in the Bradley Circuit Court, for an assault with intent to kill one E. P. Blankenship, by cutting him with a knife on or about March 4, 1919. His punishment was assessed at two years' imprisonment in the State penitentiary. From the judgment of conviction, an appeal has been duly prosecuted to this court.

(1-2) It is insisted by appellant that the undisputed evidence showed that the cutting was the result of a mutual combat, without the slightest malice or intent to kill on the part of appellant. Both intent to kill and malice were necessary elements of the crime for which appellant was convicted, and the cause should be reversed unless both essentials are inferable from the evidence. While an intent to kill is a necessary essential, it may be conceived on the instant. *Davis* v. *State,* 115 Ark. 566. While necessary for the assault to have been inspired by malice, it need not have been express malice; it may be implied. Implied malice may arise out of the circumstances of an assault. *Allen* v. *State,* 117 Ark. 432. E. P. Blankenship, the subject of the assault, testified, in substance, that he had sold appellant an organ on time; that appellant had moved without paying him for it; that, when he accosted and accused appellant on the streets of Warren with having moved his home and carried the organ with him, the negro denied the charge; that he told the negro he was lying about not moving, for he had sent some boys over to the house and found that he had gone; that appellant responded, "God damn you, I'll cut your heart out," and started at him with an open knife; that, as the negro advanced, he hit him with an ear of corn; that the negro

picked the corn up and threw it back at him, continued to advance, grabbed and cut him two or three times; that, when the crowd gathered, the negro broke loose and ran. The evidence clearly indicated a specific intent to take life with a deadly weapon, because one could not intend to cut another's heart out without intending to kill him, and the aggressiveness and viciousness of the attack, which immediately followed the use of the language, was sufficient to justify the finding of implied malice.

(3)   It is also insisted by appellant that the court erred in giving instruction No. 1, which is as follows: "If you believe from the evidence that defendant, Rufus Slaytor, assaulted E. P. Blankenship with a knife with the intent to take the life of E. P. Blankenship, then you will find him guilty with intent to kill, as charged in the indictment."

This instruction was erroneous because it eliminated the right to kill in necessary self-defense and to mitigation if the assault was made under provocation sufficient to make the passion irresistible.   This instruction, however, did not stand alone, but was qualified by other instructions to the effect that one could not be convicted of an assault with intent to kill if engaged at the time in necessary self-defense, nor if the assault was due to a sudden heat of passion without malice, either express or implied.   In the case of *Satterwhite* v. *State*, 82 Ark. 64, the trial court gave two instructions, Nos. 12 and 14, which were, in substance, the same as instruction No. 1 given by the court in the instant case.   The court upheld the verdict in that case because the jury must have understood they could not convict of assault with intent to kill if the assault was the result of a sudden heat of passion without malice, when instructions 12 and 14 were read in connection with other instructions so qualifying them.   We think, after carefully reading all the instructions given by the court, and treating them together as the whole law of the case, the jury could not have concluded that they should convict appellant if the assault was made in necessary self-defense, or under a sudden

heat of passion without malice. In an oral instruction, the court told the jury that, in order to constitute an assault with intent to kill, the evidence must show that appellant would have been guilty of murder in the first or second degree. In other instructions, murder in the first and second degrees and manslaughter, voluntary and involuntary, were defined. Then, at the request of appellant, the following qualifying instruction was given: "The court further instructs you that where two men engaged in a sudden brawl or encounter or fight, and one of them kills the other under the excitement or passion aroused suddenly, and without malice, and in consequence of the sudden brawl, encounter or fight, that such killing would only amount to manslaughter, and in all cases where the killing, if it ensued, would only amount to manslaughter, the assault would be no higher than a simple assault. On the other hand, if you believe from the evidence that defendant was acting only in his self-defense from what appeared to him as a reasonable person that he was about to receive a great bodily injury or was about to lose his life, and that such danger was, so urgent and pressing that it was necessary or appeared so to him, as a reasonable man, to strike with his knife, and that he did not provoke or bring on the difficulty and used all reasonable means at his command to avoid the assault, you will find him not guilty."

Instruction No. 1, thus limited and qualified, could not have led a jury of average intelligence to believe that it was proper to convict appellant if he committed the assault in necessary self-defense, or if the assault was the result of a sudden heat of passion without malice. Appellant also insisted that the court erred in giving the following instruction:

"You are instructed that the law of self-defense does not imply the right of attack. If you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, armed with a deadly weapon, sought the deceased with a felonious intent to kill him, or sought, brought on, or voluntarily entered into, a difficulty with

the deceased with the felonious intent to kill him, then the defendant can not invoke the law of self-defense, no matter how imminent the peril in which he found himself placed; unless you should further find that the defendant actually and in good faith endeavored to abandon and withdraw from the conflict before the fatal blow was given.''

(4)   It is contended that the first sentence in this instruction destroys the right of self-defense, because one can not defend himself without making an attack. The rest of the instruction is explanatory of the sense in which the court used the word ''attack'' in the sentence referred to. It is quite clear from a reading of the whole instruction that the court used the word in the sense of being an aggressor, and not in the sense of striking, using a weapon, etc. Of course, one could not defend himself without physical exertion of some kind, but he can not invoke the doctrine of self-defense, if the aggressor, until he has first endeavored to withdraw in good faith from the conflict. The word ''attack'' used in this sense, as reflected by the balance of the instruction, did not preclude appellant from getting the benefit of the evidence tending to show that in cutting E. P. Blankenship he was merely protecting himself against great bodily harm or death. It is also contended that the latter part of this instruction and certain other instructions given by the court were abstract and misleading. We are unable to agree with learned counsel in this contention. The instructions were responsive to the issues growing out of the evidence and were therefore in no sense abstract.

No error appearing in the record, the judgment is affirmed.