## CASH v. STATE.

### Opinion delivered November 12, 1923.

1. CRIMINAL LAW—INCOMPETENT TESTIMONY—HARMLESS ERROR.—In a prosecution for murder, testimony as to a conversation with defendant concerning a still stolen from a witness was not prejudicial where the court ruled that such testimony would be excluded unless connected with the killing, and the witness subsequently testified that he knew no facts connecting such testimony with the killing, and defendant made no request that the court's ruling be made more clear and comprehensive.

2. CRIMINAL LAW—CONCLUSIVENESS OF VERDICT.—In testing the sufficiency of the evidence to support a verdict of conviction, the Supreme Court views it, with all the inferences fairly deducible therefrom, in the light most favorable to the State.

3. HOMICIDE—SUFFICIENCY OF EVIDENCE TO SUSTAIN CONVICTION.—Evidence *held* to sustain a conviction of murder in the second degree.

Appeal from Faulkner Circuit Court; *George W. Clark*, Judge; affirmed.

*P. H. Prince,* for appellant.

*J. S. Utley,* Attorney General, *Jno. L. Carter, Wm. T. Hammock* and *Darden Moose,* Assistants, for appellee.

SMITH, J. Appellant was convicted of murder in the second degree, and from the judgment of the court sentencing him to the penitentiary on that verdict is this appeal.

There are only two assignments of error which appear to require discussion, the first being that erroneous testimony was admitted, the second that the testimony does not support the verdict.

The alleged incompetent testimony was that of A. J. McCormack, father-in-law of the deceased, the testimony being as follows: "Q. Did you have a conversation with this defendant with reference to a still or worm that had been stolen from somebody? A. Yes sir, previous to the killing. Q. How long before the killing? Counsel for defendant: I object to that. (No ruling by the court). Q. Was it as much as a month or a week? A. It was on the first Sunday in March. Q. And the killing was the 7th day of May? A. Yes sir. Court: Q. That conversation was with whom? A. With L. C. Cash. Counsel for defendant: We except to that. (No ruling by the court). Q. Tell what he said with reference to a worm or a still that had been found there. A. Well, I had a worm there supposed to be used in making whiskey, and he told me that he knew a fellow that would pin up a five spot if I would put it out where he could steal it, and the fellow would steal it if I would keep my mouth shut. Q. Where did you get this worm? A. Found it in the field. Q. Your neighbors knew you had it? A. Yes sir. Q. What did you do with it? Threw it in the yard for about six weeks, and then took it down

to the shop. Q. That was at the time it was missing?
A. Yes sir, in the back of the shop. Q. Tell the jury what
you did with the worm, where it was at the time you
missed it? Counsel for defendant: I object to that. By
the court: Objection sustained. The prosecuting attor-
ney: I am trying to show its connection with reference to
this trouble. Court: Anything pertaining to the worm,
unless you can connect it up, will be excluded. Q. Then
after you made an investigation of the body do you know
anything else about the case that would throw light on it
to the jury? A. No sir, I don't know anything; I never
saw anything except the body.''

It was, of course, improper to prove, as an inde-
pendent circumstance, anything in relation to this still,
unless that circumstance had some connection with the
killing, as showing the motive or otherwise explaining
the conduct of the parties. But this appears to have
been the view of the court, and the court so ruled. The
effect of this ruling was to advise the jury that such testi-
mony was incompetent and was not to be considered
unless it was connected with the killing, and that connec-
tion was not made. The prosecuting attorney should not
have examined the witness on this subject without being
able to show its relevancy, but the court made a proper
ruling in excluding the testimony, and if it was believed
that the ruling was not sufficiently clear and compre-
hensive, a request to make it so should have been made.

The next and only question asked the witness on his
direct examination, after the ruling of the court had
been made, established the fact that the witness was not
in possession of any facts connecting the possession of
the still with the killing charged in the indictment, and
we conclude therefore that the court's ruling, under the
circumstances stated, removed the prejudice of the incom-
petent testimony.

In testing the sufficiency of the evidence to support
the verdict, we of course view it, with all the inferences
fairly deducible therefrom, in the light most favorable

to the State, and, when thus viewed, the facts may be summarized as follows: It was the theory of the State that appellant killed deceased because of some previous trouble between them, and that appellant went to the home of deceased and called him out of his home and killed him. The wife of deceased testified that she spent the night before the killing at her father's home, which was about a quarter of a mile from her own. That she went home about ten or fifteen minutes after she heard the report of a gun, and when she arrived there she found both the front and back doors open, and two chairs were turned over near the front door. That the bed in which her husband had slept was still warm; and upon calling him, she heard some one run up a hill near the house. She then returned to her father's house, and was there when the body of her husband was found.

Deceased's body was found about thirty or thirty-five steps from his house. He was lying on his back, with his arms extended, the left arm being shot nearly in two, with a wound in the breast near the heart, and an empty shotgun shell was found about fifteen or twenty feet from the body.

Appellant testified that he went over to deceased's house early in the morning of the killing to employ him to do some plowing, and that he awakened deceased when he went there, and when asked why he carried his gun, he answered that he was afraid some of deceased's folks would get him. No one saw the killing except appellant, and, as a witness in his own behalf, he made a case of self-defense, his story being that he went to deceased's house, to employ him to plow for him, and that he carried his gun thinking he might see a wolf. That deceased accused him of having led a mob to his house the preceding night, and made a murderous assault upon him. That he attempted to run away, and fired the fatal shot only when he saw he could not escape injury by flight. The jury evidently did not credit this testimony, and we cannot say that this was arbitrary.

No error appearing, the judgment is affirmed.