WHITE *v.* STATE.

Opinion delivered June 2, 1924.

1. CRIMINAL LAW—SUFFICIENCY OF EVIDENCE.—In testing the legal sufficiency of evidence to sustain a conviction, it must be considered in the light most favorable to the State.

2. HOMICIDE—INVOLUNTARY MANSLAUGHTER.—One driving an automobile upon a public highway while drunk, and at a greater speed than allowed by statute, may be found guilty of involuntary manslaughter if he thereby causes another's death.

3. CRIMINAL LAW—INSTRUCTION AS TO ACCUSED'S CHARACTER.—An instruction that, if the jury find that defendant was a man of good character, they might take this fact into consideration in determining his guilt or innocence, but, if they believe from all the evidence, beyond a reasonable doubt that defendant is guilty, they shall so find, notwithstanding his good character, *held* correct.

Appeal from Arkansas Circuit Court, Northern District; *George W. Clarke,* Judge; affirmed.

*Gray & Morris,* for appellant.

*J. S. Utley,* Attorney General, and *John L. Carter,* Assistant, for appellee.

HART, J. Shannon White was convicted before a jury of the crime of involuntary manslaughter, and, the punishment being left by the jury to the court, he was sentenced to the State Penitentiary for ninety days.

From the judgment and sentence of conviction the defendant has duly prosecuted an appeal to this court.

It is first earnestly insisted that the evidence is not legally sufficient to support the verdict.

It appears from the record that the defendant, Shannon White, operated a service car out of England, in Lonoke County, Arkansas, and that he had done so for about seven years before the date in question. On the 15th day of December, 1922, S. C. Hendrix employed the defendant to take him from England to a sawmill near DeWitt, Arkansas. Hendrix was going there to try to find Ashley Stilwell, who had robbed him of $291. He carried with him Mrs. Lona Watkins, who was acquainted in the neighborhood where they were going. The

weather was very cold, and.Mrs. Lona Watkins rode on
the front seat with the defendant, who was driving the
car.   They left England about eight o'clock P. M. and
reached their destination about twelve o'clock P. M.
Hendrix failed to find the man he was looking for, but
found out from Mrs. Watkins that he could purchase
some whiskey.  He first bought a quart jar with some
whiskey in it, and then sent a man for some more.   The
man returned later in the night with two five-gallon kegs
of whiskey, which were delivered to Hendrix.   Hendrix
insisted upon putting the two kegs of whiskey in the
automobile. White protested against hauling the whiskey,
but finally consented to do so.   They started back to
England about four o'clock in the morning.   Hendrix
rode on the back seat, and Mrs. Watkins rode on the front
seat with the defendant, who drove the car.   When they
got back on the turnpike, going towards England, the
defendant drove the car at a speed of twenty-five miles
an hour, according to his own testimony.   He says that
he drove at this rate for about twelve miles, and then
checked the speed of the car to something like eighteen or
twenty miles.   Mrs. Watkins had become drunk, and
attempted to take hold of the steering wheel and run the
car.   This caused the car to get partly off of the turn-
pike, and the defendant, seeing that it was going to
strike a culvert a short distance in front of them, tried
suddenly to turn the car back on the turnpike.   The sud-
den turn of the car caused it to turn over, and the defend-
ant and Mrs. Watkins were pinned down under the car,
in a pool of water. Hendrix extricated himself from the
car, and reported the accident to some people who lived
near by.   When they arrived at the scene of the accident,
Mrs. Lona Watkins was dead, and the defendant, White,
was nearly dead from cold.

According to the testimony of both Hendrix and the
defendant, Mrs. Watkins was drunk at the time of the
accident. Hendrix had been drinking whiskey, and says
that he was asleep on the back seat at the time of the

accident. Hendrix said that they had all drunk about a quart of whiskey before the accident occurred.

The defendant admitted that he had taken one drink of whiskey on their return, after the car got on the turnpike, but denied being drunk, or that he drank any more whiskey.

The people in the neighborhood who were called to the scene of the accident said that the defendant was either stupefied with drink or with cold. A physician who was called in testified that, in his opinion, the defendant was drunk.

One of the witnesses for the State testified that it was probably an hour before they were able to get any sense out of the defendant; and that the reason for this was that he was either drunk or knocked crazy; that he made an examination of the ground with reference to where the car left the road; that it appeared as though the car gradually left the turnpike 200 yards or more before it came to the culvert, and gradually got a little farther off, and that it looked like it made a sharp turn, and this turned the car over.

The accident occurred just about daylight, and it appears, from the tracks of the automobile, that it partly left the rock of the turnpike about 150 or 200 feet before it turned over. The car made a short turn, as if the driver was trying to get all of the wheels back on the hard surface of the road, and the sudden turn was the cause of the car's turning over. It appears from the tracks that the car left the hard surface of the pike at an angle and went straight along after the wheels on the right side left the pike. The wheels on the right of the car hugged the edge of the pike. The wheels on the left remained on the hard surface of the pike.

Section 7426 of Crawford & Moses' Digest provides that no person shall drive a motor vehicle upon any public highway in this State at a speed greater than is reasonable and proper, having regard to the traffic and the use of the way, or so as to endanger the life or limb or injure the property of any person.

The section further provides that, if the rate of speed of any motor vehicle operated on any public highway outside the closely built-up business portion or residence portion of any incorporated city, town or village, exceeds twenty miles an hour for a distance of one-fourth of a mile, such rate of speed shall be *prima facie* evidence that the person operating such motor vehicle is running at a rate of speed greater than is reasonable and proper, having regard to the traffic and the use of the way, so as to endanger the life or limb or injure the property of any person.

Section 2626 of the Digest provides that any person who shall appear upon any public highway in a drunken condition shall be deemed guilty of a misdemeanor.

In testing the legal sufficiency of the evidence to support the verdict, it must be considered in the light most favorable to the State. When so considered it is fairly and legally inferable from the evidence that the defendant was drunk at the time the accident occurred, and that he was driving at a greater rate of speed than allowed by the statute. One of the purposes of these statutes is to prevent accidents and to preserve persons from injury.

The jury might have found the defendant guilty of gross negligence in operating the automobile upon a public highway; and one doing so and occasioning injuries to another, causing death, may be found guilty of involuntary manslaughter. *Bowen* v. *State,* 100 Ark. 232; *Edwards* v. *State,* 110 Ark. 590; *Madding* v. *State,* 118 Ark. 506; *People* v. *Townsend* (Mich.), 183 N. W. 177, 16 A. L. R. 902; and *Schultz* v. *State* (Neb.), 130 N. W. 972, 33 L. R. A. (N. S.) 403.

It is next insisted that the court erred in giving instruction No. 7, which reads as follows:

"There has been some testimony here offered with reference to the former good character of the defendant, that calls for an instruction upon the part of the court. Good character is no defense to crime, where guilt is established, and that to the satisfaction of the jury, then

such good character, if proved, should not be considered by you. If you have a reasonable doubt as to whether or not he committed the offense, or as to whether or not he operated the car in a careless, reckless or wanton manner, as charged in the indictment, 'then such good character should be considered by you, and, if such reasonable doubt still exists, turn the scales in favor of the accused, and a verdict of not guilty returned, but, when guilt is established, then it is no defense to crime and should have no weight in the consideration of the jury in determining the question of his guilt or innocence.''

In this connection it may be stated that the court gave other instructions on the question of reasonable doubt. While the instruction is not in proper legal form, we do not think the judgment should be reversed for giving it. No specific objection was made to it. In a criminal prosecution, evidence of the accused's general good character is admissible with regard to the particular trait involved in the nature of the charge. The trait of character which may be proved depends upon the nature of the crime charged and the moral wrong involved in its commission. *Seaton* v. *State,* 151 Ark. 240.

The court should have told the jury that, if they found that the defendant was a man of good character, they might take this fact into consideration in determining the question of his guilt or innocence; but that if they believed, from all the evidence in the case, beyond a reasonable doubt, that the defendant was guilty, they should so find, notwithstanding his good character.

We think that, when the instruction is considered as a whole and in connection with the other instructions on the question of reasonable doubt, the court meant to instruct the jury as we have just indicated. If the defendant thought otherwise, he should have made a specific objection to the instruction, and doubtless the court would have corrected it. The instruction in question plainly tells the jury that it should not convict the defendant if it had a reasonable doubt as to whether or not he committed the offense, and the evidence of his

good character would, of course, be considered by the jury in reaching that conclusion.   This holding is in accord with the reasoning of the court in the case of *Seaton* v. *State,* 151 Ark. 240.

Several witnesses in behalf of the defendant testified that his reputation for peace and sobriety was good. It must be presumed that the members of the jury were of reasonable information, and carried into the jury box their experience and understanding in the ordinary affairs of life. ;We do not think that the jury could have understood the instruction to mean that the evidence of the good character of defendant should not be considered by it in arriving at its verdict.   The court made it plain to the jury throughout its instructions that the defendant could not be convicted unless the jury was satisfied of his guilt from the evidence beyond a reasonable doubt, and, in determining his guilt or innocence within the meaning of the instruction, the jury was told that it could consider the evidence of the good character of the defendant for peace and sobriety.

We find no prejudicial error in the record, and the judgment will be affirmed.