## TURNER *v.* STATE.

### Opinion delivered October 31, 1927.

1. CRIMINAL LAW—SUFFICIENCY OF EVIDENCE.—In testing the legal sufficiency of evidence to support a verdict of guilty, the Supreme Court will consider it in the light most favorable to the State, giving it its strongest probative force.

2. HOMICIDE—ASSAULT WITH INTENT TO KILL—SUFFICIENCY OF EVIDENCE.—In a prosecution for assault with intent to kill, evidence *held* to sustain a conviction.

3. HOMICIDE—ASSAULT WITH INTENT TO KILL—EVIDENCE.—Where an assault is made without warning, and without circumstances of mitigation, justification, or excuse, and where, if death had resulted, a charge of murder in the second degree would have been sustained, a conviction of assault with intent to kill will be sustained.

Appeal from Calhoun Circuit Court; *L. S. Britt,* Judge; affirmed.

*Paul G. Matlock* and *J. S. McKnight,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

KIRBY, J. This appeal is prosecuted from a judgment of conviction for assault with intent to kill, fixing the punishment therefor at two years in the penitentiary. It is only urged here that the evidence is insufficient to sustain the verdict.

It appears from the State's testimony that the parties were all attending a dance in the community; that Jep Turner went into the room, taking the little girl of Walter Tomlinson to her mother, who asked what he was doing with the baby, and where Walter was; he replied "Out yonder," and she said, "Carry the baby back to him." But took the baby, and said, "I guess you have made Walter drunk," and he said, "You are a G—— d—— liar, and if you don't shut up I will slap your jaws." He then turned and walked out of the room down to the yard. A few minutes afterward he intercepted and stopped Walter Tomlinson, who was coming from the gate to the steps of the house to enter.

One witness said: "Jep called him back, and told him he wanted to see him. Walter went to where he was. I heard Jep say, 'And I don't like it a G—— d—— bit.' I heard Walter say, 'Jep, let us drop this and be friends,' and Jep said, 'Well, if she is that big, ignorant G—— d—— fool, we will drop it.' Walter said, 'Don't call my wife that.' Jep then pulled his gun and stuck it in Walter's stomach, and said, 'That is what she is.' I ran between them, told Bruce to take Jep off and I would take Walter. I went toward the house with Walter and Jep,

and Bruce went out of the gate. I heard Jep say, 'Bruce, I will kill that son of a bitch.' Walter and I talked in the yard about three minutes, and went toward the steps, and as we went on to the steps I heard some one run behind me. I turned, and Jep hit me on the side of the head and hit Walter on the back of the head. I fell to my knees, Walter staggered to one side, and Jep hit him again. Hit him four licks. After Jep hit him the second lick Bruce came in and told him to stop. Bruce had a gun under his coat, aimed at me. They went down the road. I picked Walter up, thought he was dead, he did not breathe for about a half a minute. I found this stick (a piece of 2x4 scantling) about 75 yards from where he hit us. It was covered with some leaves. It is a two-by-four.''

Walter Tomlinson stated that he and his family had gone to the dance at Porter's, and that Turner had been there for some time; that they had never had any trouble before; that defendant called his wife a G—— d—— ignorant fool to his face, out near the gate; that he had started back into the house, and got about half way between the gate and the steps; met Jep, who said to him, ''Your wife gave me a damn good cursing a while ago, and I don't like it a G—— d—— bit,'' to which he replied, ''We have been good friends, and let us don't have any fuss. He said, 'She is a G—— d—— ignorant fool,' and stuck a gun in my stomach. Chesley, my brother, was standing there, and walked between us and told Bruce to take Jep off, and we would go home. They went out of the gate, and we started back in the house. As we started up the steps some one struck me in the back of the head. It is 15 or 20 feet from the gate to the door steps. I did not see who struck me. It knocked me crazy, and I knew nothing for five days.'' He was in bed a month, and had not yet recovered; there were several fractures of the skull. Witness and defendant were friends, and had never had any trouble before. Other witnesses standing 75 yards away heard the licks, and one

saw defendant with the stick hiding it in the leaves, when he passed after the difficulty.

The jury evidently believed the testimony of the State's witnesses in arriving at its verdict, and this court, in testing the legal sufficiency of the evidence to support the verdict, must consider it in the light most favorable to the State, giving it its strongest probative force. *White v. State,* 164 Ark. 517, 262 S. W. 338; *Knight v. State,* 165 Ark. 226, 263 S. W. 782.

Although defendant denied that he had struck Tomlinson from behind, and stated and attempted to prove by others that he had only struck him when he was advancing on him with a drawn knife, and in self-defense, the jury were warranted in believing that defendant had stopped Tomlinson in the yard with a view to provoking him to a difficulty by abusing his wife and presenting a pistol against him, and after Tomlinson had insisted that they should continue to be friends and not have any fuss; and then, after Tomlinson's brother had got between them and told Bruce to take Jep Turner away and that he and his brother would leave the dance, the defendant then went outside the yard, saying he would kill the son of a bitch, and got the 2x4, came back in the dark, and struck Walter Tomlinson from behind, without warning, knocking him down, and then striking him two or three times after he was down, and until his brother made him stop.

There were no circumstances of mitigation, justification, or excuse shown, and the law implies malice, and, if death had resulted from the assault, it would have constituted murder in the second degree. *Allen v. State,* 117 Ark. 441, 174 S. W. 1179; *Clardy v. State,* 96 Ark. 52, 131 S. W. 46; *Davis v. State,* 115 Ark. 566, 173 S. W. 829; and *Slaytor v. State,* 141 Ark. 11, 215 S. W. 886.

The evidence is sufficient to support the verdict, and the judgment is affirmed.