WARFORD *v.* STATE.

Opinion delivered December 19, 1927.

1. CRIMINAL LAW—SUFFICIENCY OF EVIDENCE.—In testing the legal sufficiency of evidence to sustain a conviction, it must be considered in the light most favorable to the State.

2. LARCENY—ADMISSIBILITY OF EVIDENCE.—In a prosecution for larceny of goods from a store, it was not error to permit a clerk in the store to testify that other goods in addition to those charged to have been taken were stolen at the same time, all being of the same make and kind of goods as those charged to have been stolen.

3. CRIMINAL LAW—BEST AND SECONDARY EVIDENCE.—Admission of testimony as to the contents of receipts given to defendant for money paid by him for goods he had stolen, *held* not error where the receipts were in possession of defendant.

4. CRIMINAL LAW—HARMLESS ERROR.—Admission of testimony as to the contents of receipts given to defendant for money alleged to have been paid by him for stolen goods, if error, was not prejudicial, where defendant, who had possession of the receipts, later produced them in testimony himself.

5. LARCENY—ADMISSIBILITY OF TESTIMONY.—Admission of the testimony of a clerk in a prosecution for the larceny of goods from a store, to the effect that considerable goods had been missed shortly before defendant was arrested, was not error where defendant had told the officers that he had been in the store on three different occasions and had taken goods each time.

6. CRIMINAL LAW—EVIDENCE OF OTHER CRIMES.—In a prosecution for larceny of goods from a store, testimony tending to show that defendant had stolen goods from the store at other times was admissible for the purpose of disclosing the good faith or the criminal intent of the accused.

Appeal from Madison Circuit Court; *J. S. Maples,* Judge; affirmed.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

KIRBY, J. This appeal comes from a conviction for grand larceny upon an indictment returned by the grand jury of Madison County charging appellant with the crimes of burglary and grand larceny.

No brief has been filed for appellant.

The testimony shows that the store of Nolen Pool, at Delaney, Arkansas, was broken into and merchandise of

the value of more than $10 taken therefrom; that the appellant was operating a little restaurant, where he served short orders, adjoining the store. Goods of considerable value had been missed from time to time, as taken out between the closing of the store at night and the opening in the morning, and appellant was suspected as having taken them.

A witness, one of the clerks, had seen a car drive up in front of the store, while he was standing in the door with his wife, and noticed appellant come out to the car with a bundle or something in a sack, which he put in the bottom of the car. He knew the lady driver, and received information that the stuff he had seen put in the car had been taken out of the store. They began to watch the store, and, on Christmas Eve, witness, with his wife, when the other watchers came out of the store, talked a little while with them, and went to the store to get some candy and some things to put in the boy's stockings, and found a man in the store, who ran into the side room and slammed the door. Witness was scared, and went back to his house, which was about 15 or 20 steps from the store, and stood inside of the door until the man came out of the store, and he recognized him to be Pete Warford, the appellant. He came out of the back door and turned straight to the left, and went over the palings between two buildings, in direction of Warford's place. They told the proprietor, and the next day the officers came out and arrested Warford. He was brought to witness' house, and admitted to him and Mr. Guinn, the sheriff, that he had been in the store about three times, and asked that they be as light on him as they could.

The sack that Warford had put in the car had overalls and jumpers in it that belonged to the store, and witness did not know how many had been taken, but only the number recovered. Warford's children had on two small pairs of overalls and jumpers when he was arrested. Warford was with the children.

After appellant was bound over, he inquired if he could pay enough to satisfy the owners of the goods and

have the matter kept out of court, and was told that, so far as they were concerned, it would be settled, and he paid $500 and was given two receipts therefor, one for $75 and the other for $425, which he produced in evidence.

This witness stated that the stock carried was of the value of three or four thousand dollars, and that he had been in sole charge of the store, as the clerk of Mr. Pool. Thought that the store had lost somewhere between seven and nine thousand dollars in goods taken in the last eight years. This witness stated that a considerable amount of goods had been missed on another occasion, shortly before appellant was arrested, and that he did not know when the goods described in the indictment were stolen nor how much at a time.

Other witnesses stated that they had found some of the goods, the overalls and jumpers, at Jim Warford's, where appellant boarded, and some at George Walker's, which had been bought from appellant and given to his father by Leonard Walker, and also some at Sanford Warford's, the father of appellant.

The night after appellant was arrested, he told two or three people that he had been in the store two or three times and had got goods each time, and also stated that he guessed he was gone.

The sheriff testified about the recovery of the goods, that were identified as the property of Nolen Pool, the owner of the store. Another witness, and also the deputy prosecuting attorney, stated that they had had a conversation with Warford at Mr. Faubus', the clerk's house, and that he stated he had gone into the store at the window, and was by himself, and the last time he went into the store was when Mr. Faubus claimed he saw him coming out, and that he did not get anything that time, but got all the stuff at other times shortly before.

Stewart, a deputy sheriff, testified about finding some of the stuff, and, before they put Warford in the car, he asked witness to use what influence he had to help him get out of the trouble as lightly as possible, telling him at the time that he figured he was in bad, and needed assistance.

Defendant testified that he was running a restaurant at Delaney, where he had lived for 43 years, and had not been arrested before. That he went to the store about 2 o'clock and bought a jumper and overalls, and, when he bought them, some one called him to the door, and he told Al he would be back and settle with him. He then went to his restaurant and found a bunch there to cook for, and did not get to go back until late, and Al was talking to some man, and told him he would be with him in a minute. He stayed about five minutes, and stepped back and picked up the overalls and jumper and two small pairs, thinking he would go back and pay him in a few minutes, as he could trade on credit there when he got ready, and he wanted to see if the overalls fitted the children, and found they did. He said they had the tags on, and that he did not mean to steal them, and that was all he ever took. Admitted selling a new pair of overalls to Mr. Walker; said they were too small for him, and had them lying on the counter where everybody could see them, and did not try to conceal them. Denied that Al Faubus, the clerk, saw him in the store one night, but told the officers that he went in the store because they kept bringing up things against him. Said he was not in there that night, but was in there when he got the stuff. He paid Pool $500, and said that he had agreed to stop prosecution as far as they were concerned. They did not guarantee him anything. Said he had mortgaged or sold nearly everything he had to get the money which he claimed he paid to stop prosecution, because he heard that Al and his wife claimed they caught him in the store, and he knew that if they claimed that and stuck with it he would sure go to the pen. Said he did not tell Mr. Guinn the truth when he said he had been in the store three times, and only said it to get rid of the talking.

The first three grounds of the motion for a new trial challenge the sufficiency of the evidence to support the verdict. In testing the legal sufficiency of the evidence to sustain a conviction, this court has uniformly held that it must be considered in the light most favorable to the

State, and it is sufficient to sustain the verdict; *White* v. *State,* 164 Ark. 517, 262 S. W. 338; *Cash* v. *State,* 151 Ark. 75, 255 S. W. 311.

There was no error in allowing Al Faubus, the clerk, to testify regarding goods alleged to have been taken from the store, which were not described in the indictment. He stated that there were more overalls and jumpers recovered than the number charged to have been taken in the indictment. The testimony shows that other overalls and jumpers that were recovered in addition to those charged to have been taken in the indictment were all the same make and kind of goods as those charged to have been stolen, and no error was committed in proving that more goods were stolen than had been charged in the indictment to have been taken. This constituted no material variance between the allegations and the proof. *Hyde* v. *State,* 168 Ark. 580, 271 S. W. 330.

There is no merit in the contention that error was committed in allowing the witness, Al Faubus, to state what was contained in the receipts given to the defendant for money alleged to have been paid by him, since the testimony shows this witness had given appellant receipts for the $500 claimed to have been paid for the stolen goods. The receipts of course were the best evidence, but they were in the possession of the appellant, who later produced them in testimony himself, and, if any error was committed in permitting Faubus to make a statement about their contents, it could not have been prejudicial. *Clayton* v. *State,* 159 Ark. 592, 252 S. W. 589.

Neither was error committed in allowing Faubus, the clerk, to testify that a considerable amount of goods had been missed as taken from the store shortly before defendant was arrested. The defendant told the officers that he been in the store on three different occasions, and it was not error to show that some goods had been missed from the store before he was arrested. He admitted having taken some goods from the store at one time, but stated that he had no intention of stealing them, but

intended to return and pay for them. The testimony tend-
ing to show that he had taken goods from the store at
other times was admissible for disclosing the good faith
or criminal intent of the accused. *Cain* v. *State,* 149 Ark.
616, 233 S. W. 779; *Davis* v. *State,* 117 Ark. 296, 174 S. W.
567; *Howard* v. *State,* 72 Ark. 586, 82 S. W. 196.

The last assignment, that the court erred in refusing
to grant a new trial on the grounds of newly discovered
evidence, is without merit. The name of the witness who
was supposed to know the facts and give the testimony
was not disclosed, nor any statement made setting out
what the witness would testify. Neither did the motion
disclose that any diligence had been used to procure the
testimony of the witness, and the alleged testimony was
only contradictory and impeaching in character anyway,
and the court did not abuse its discretion in denying the
motion. *Hayes* v. *State,* 169 Ark. 883, 277 S. W. 36.

The evidence is sufficient to support the conviction,
as already stated, and we find no prejudicial error in the
record, and the judgment is affirmed.