## BOWEN v. STATE.

### Opinion delivered October 9, 1911.

1. . EVIDENCE—OPINION OF NONEXPERT—SPEED OF AUTOMOBILE.—A nonexpert witness may give his opinion as to the rate of speed at which an automobile was travelling on a particular occasion.  (Page 236.)

2. APPEAL AND ERROR—IMPROPER REMARKS OF COURT.—In a prosecution for involuntary manslaughter in negligently driving an automobile over a child thereby killing her, the court asked a witness, "Do you think it is right for a man to run a car on the street in such condition that he has not got control of it?"  The witness answered:  "You have got control

there." The court stated to the jury: "I just want to test his knowledge as to what he knows about the running of a car. Gentlemen, that has nothing to do with this man's case here." *Held* that the court's question was improper, but, in view of the answer and the further remarks of the court, it was not prejudicial. (Page 237.)

3. SAME—HARMLESS ERROR.—In a prosecution for involuntary manslaughter in negligently killing a child by striking her with an automobile, a witness stated that when defendant came back to where the child was lying he said: "Put her in, and we will carry her to a doctor." The witness further stated that he would not have used "quite as careless a manner" as defendant used. *Held* that the opinion of the witness, though improper, was not prejudicial (Page 237.)

4. SAME—ARGUMENT OF COUNSEL.—The prosecuting attorney, in his closing argument in a prosecution for manslaughter, said: "Some of you gentlemen sat on this jury a few days ago in which the State only had the evidence of one witness to convict the defendant, and you remember the case to which I refer." Upon objection being made the court admonished the jury that the witnesses were weighed, that their testimony was weighed, and that the witnesses were not counted, *Held* that the argument, in connection with the court's admonitions was not prejudicial. (Page 238.)

5. TRIAL—ARUGMENT OF COUNSEL.—In a prosecution for involuntary manslaughter in negligently killing a child by striking it with an automobile, the prosecuting attorney said to the jury: "The automobiles of the town are attempting to control and monopolize the streets; and if they are not stopped, they will run you and me, who do not own them, off the streets. It is a pity that the defendant had not been indicted for murder in the second degree and convicted for it; and if it were possible at this late time to so convict him I would ask them to give him the limit for that offense. * * * For the protection of your wives and your little children on the streets and highways, I appeal to you to stop this reckless driving of automobiles that you see from time to time on the streets by making an example of this defendant, by giving him the limit at hard labor in the penitentiary." *Held* not to transcend the bounds of legitimate argument. (Page 239.)

6. HOMICIDE—MANSLAUGHTER—CONTRIBUTORY NEGLIGENCE.—In a prosecution for involuntary manslaughter alleged to have been committed by negligently driving an automobile over a child, in the streets, it was not error to refuse instructions to the effect that if deceased was of sufficient age and discretion to know the danger of such a vehicle the defendant was not guilty unless he discovered the child's danger or could by proper care have discovered it and thereafter want only . and recklessly made no effort to avoid striking her. (Page 239.)

Appeal from Pulaski Circuit Court; *Robert J. Lea,* Judge; affirmed.

### STATEMENT BY THE COURT.

The appellant was indicted for the crime of involuntary manslaughter, the indictment charging that he did unlawfully, wilfully, feloniously, carelessly, recklessly, wantonly, and negligently kill Ethel Sherill by then and there striking her with an automobile, he (the appellant) being then and there running, driving and guiding said automobile in an unlawful, wilful, careless, reckless, wanton, and negligent manner, etc.

The appellant was tried and convicted, and his punishment fixed at ten months' imprisonment in the State penitentiary. His motion for new trial was overruled, and he duly prosecutes this appeal.

*Bradshaw, Rhoton & Helm,* for appellant.

1. It was error to admit the incompetent testimony of several witnesses. They had shown no knowledge of what the usual rate of speed of an automobile was, or that their experience enabled them to judge such speed. 93 Ill. App. 411, 416; 96 *Id.* 10, 13; 116 N. C. 955; 17 Cyc. Law & Pr. p. 105, par. Q.

2. The court erred in overruling objections to the prosecuting attorney's argument. It was highly prejudicial. 48 Ark. 106, 131; 58 *Ib.* 473, 483; *Ib.* 353, 368; 61 Ark. 130; 62 *Id.* 516; 63 *Id.* 174; 65 *Id.* 389; *Ib.* 475, 486; *Ry. Co.* v. *Waren,* 65 Ark. 619, 625; 67 *Id.* 365; 69 *Id.* 648; 70 *Id.* 305; 71 *Id.* 415, 427; 73 *Id.* 148; *Ib.* 453; 74 *Id.* 210, 256; 79 *Id.* 53; 80 *Id.* 23; 81 *Id.* 25, 31, 87; 82 *Id.* 64-72, 562-8; 95 Ark. 233.

3. There are many errors in the instructions given and refused. The child was of an age at which children may be guilty of contributory negligence as matter of law. 1 Thompson, Com. on Law of Negligence § § 311-315; 137 Mass. 197; 64 Fed. 830; 93 N. C. 92; 68 Iowa, 602; 33 N. Y. 642; 39 Hun. (N. Y.) 445; 26 L. R. An. (N. S.) 435; 4 A. & E. An. Cases, 797.

*Hal L. Norwood,* Attorney General, and *Wm. H. Rector,* Assistant, for appellee.

1. The testimony of nonexperts as to the speed of an automobile are properly admissible. Matters of fact observed by a witness and about which a man of common understanding

might be informed may be testified to. A witness may give his opinion, if cognizant of the facts, etc., on questions of · identity, size, weight, *distance* and time. 1 Greenl. Ev. § 44 note a; 34 Mass. 198; 1 Smith's Leading Cases, 286 note; 62 Ark. 254; 66 *Id.* 498; 117 Mass. 122; 3 Wigmore on Ev. § 1977; 97 Ala. 165; Thompson on Negl. § 7750; 94 Ark. 544; 6 Thompson on Negl. § 7754; 5 Enc. of Ev. p. 708; 22 App. (D. C.) 194; 210 Ill. 39; 29 R. I. 450; 115 S. W. 1011.

2. The argument of the prosecuting attorney was not prejudicial; nor was it improper. But, if so, it was cured by the admonition of the court. 73 Ark. 453; 95 *Id.* 321; 94 *Id.* 548; 95 *Id.* 233; 76 *Id.* 39; 88 *Id.* 62; 94 *Id.* 514; 71 *Id.* 62; 74 *Id.* 256.

3. There is no error in the court's charge. This is not . a *civil* case, but a criminal case, and the doctrine of *contributory negligence* is unknown to the criminal law. 3 Cox, Cr. Cas. 439; 12 *Id.* 355; 12 E. C. S. 191; 9 Cox C. C. 55; 134 Mass. 211; 125 Ill. 584; Wharton on Homicide, § 482; 1 Bish Cr. Law, § § 256-263; Thompson on Negligence, White's Sup., § 1540.

4. As to the duties of automobilists on the highway, see 126 N. Y. Sup. 522; 4 A. & E. Ann. Cases (Mass.) 396 case note; 118 Cal. 154; 51 N. J. L. 182; 6 A. & E. An. Cas. 656.

WOOD, J., (after stating the facts). 1. Over the objection of appellant the court permitted a witness to testify in response to a question as to whether the automobile was going fast or not, as follows:

"I remarked to this fellow Vaughan; I said: 'Gee, look at that thing go!'"—and further to testify that he judged the machine was going about thirty miles an hour.

Another witness, over the objection of appellant, was permitted to testify, in answer to a question as to whether the automobile was going at an unusual rate of speed or not, as follows: "Unusually fast." And further, in answer to the question, "What was his (defendant's) manner?" as follows: "Personally speaking, I don't think I would use quite as careless a manner as he used here."

Other witnesses, over the objection of appellant, in answer to questions as to whether the automobile was going at an unusual rate of speed or not, testified as follows:

"I think so; yes." And again: "Yes, it was unusual."

The appellant contends that this testimony was incompetent, for the reason that the witnesses had not shown that they had any knowledge of what the usual rate of speed of an automobile is, or that their experience would enable them to judge of the rate of speed of an automobile.

The killing occurred on the streets of Little Rock, where automobiles are constantly passing.. Transportation by automobile may be taken as a matter of common knowledge and general information. It does not require the knowledge of an expert to determine whether an automobile is moving at a usual or unusual rate of speed. Any person of ordinary understanding and common observation is competent to speak upon that question. In the case of *Railway Company* v. *Thomason*, 59 Ark. 143, this court said:

"The witness was testifying to matters of fact which he says he had observed, and about which men of common understanding might be informed upon observation. Any person cognizant of the facts upon which he bases his judgment may give his opinion on questions of identity, size, weight, distance and time. Such questions are open to all men of ordinary information." Again:

"We can see nothing in the distance or range of the reflection of light by the headlight of an engine calling for the exercise of peculiar skill, the possession of professional knowledge, or requiring any peculiar habit of study in order to qualify a person to understand it, and to testify about it intelligently." The same may be said as to the speed of an automobile. See, also, *Little Rock Traction & El. Co.* v. *Nelson*, 66 Ark. 498; *Miller* v. *State*, 94 Ark. 544; *St. Louis & S. F. Ry. Co.* v. *Brown*, 62 Ark. 254.

In *State* v. *Watson* (Mo.) 115 S. W. 1011, there was a conviction for manslaughter, the charge being similar to that under consideration. Several witnesses, who saw the automobile running, testified that defendant was driving the automobile at a high rate of speed. The defendant in that case objected to the testimony, contending that it was error to permit the witnesses "who knew nothing about the operation of automobiles to give their opinions as to the rate of speed at which the automobile being operated by the defendant was run-

ning just before the deceased was struck." The court in that case said:

"The rate of speed at which an automobile is running is not a matter exclusively for the testimony of experts. If that was true, then, as has been intimated by this court, it would be a matter of impossibility for those injured by the running of vehicles, either automobiles, street cars, or regular railroad cars, to always have experts at hand to show what rate of speed was being made. A holding of that character would be wholly impracticable, and do a great injustice to many persons who had been negligently injured by vehicles of the character indicated running at an excessive rate of speed. At last, the only reasonable settlement of that question is to hold that witnesses who at least know what an automobile is and have seen them operated might give their opinions as to the rate of speed. As to the weight to which such opinions are entitled is a matter entirely for the jury." See, also, 3 Wigmore on Evidence, § 1977; *Commonwealth* v. *Sturtivant*, 117 Mass. 122; *State* v. *Welford*, 29 R. I. 450.

2. The court asked witness Clem Schaer the following question: "Do you think it is right for a man to run a car on the street in such condition that he has not got control of it?" And the witness answered as follows: "You have control there." The court stated to the jury, with reference to this question: "I just want to test his knowledge as to what he knows about the running of a car. Gentlemen, that has nothing to do with this man's case here."

The question propounded to this witness was improper, but, when taken in connection with his answer and the remarks of the presiding judge, we are of the opinion that the testimony was not prejudicial.

It was improper also for the witness to have stated that he would not have used "quite as careless a manner" as appellant used. But this question was in response to the question touching the conduct of defendant immediately after the collision and so close as to be of the *res gestae,* and it was competent for the State to show what the manner and conduct of the appellant was immediately after the collision and in connection therewith as tending to prove the appellant's state of mind when the injury occurred. And, while the witness

should have been required to state facts, instead of giving his opinion as to the manner of appellant, we do not think this testimony could have had any prejudicial effect. The witness was at least but in effect stating as a fact that the appellant was indifferent or careless in his manner. The witness had stated that the language of the defendant, when he came back to where the child was lying, was as follows: "Put her in, and we will carry her to a doctor." Witness said that this language on the part of appellant seemed to him (witness) like a careless tone of voice, and from this the witness gave the answer above quoted which was objected to. We are of the opinion, when the examination is taken altogether, showing what the appellant stated and what was the foundation for the testimony that was objected to, that the testimony could not have had any influence on the minds of the jury prejudicial to appellant. For the jury had before them the exact language of appellant, and it was for them to say as to whether or not that indicated any indifferent or careless manner on the part of appellant. So far as the exclamation of appellant was concerned, the only reasonable purport of the language was to show that appellant was not lacking in solicitude and sympathy for the one whom he had injured, and the jury could not have drawn any other conclusion from the whole testimony. Therefore, it was not prejudicial.

3. The prosecuting attorney, in his closing argument, said: "Some of you gentlemen sat on this jury a few days ago in which the State only had the evidence of one witness to convict the defendant, and you remember the case to which I refer." Upon objection being made by the appellant, the court admonished the jury that the witnesses were weighed, that their testimony was weighed, and that the witnesses were not counted. The argument, taken in connection with the admonition of the court, could not have been prejudicial.

The prosecuting attorney, in his closing argument, further stated: "The automobiles of the town are attempting to control and monopolize the streets; and if they are not stopped, they will run you and me, who do not own them, off of the streets. It is a pity that the defendant had not been indicted for murder in the second degree and convicted for it, and if it were possible at this late time to so convict him I would

ask them to give him the limit for that offense." And further:

"For the protection of your wives and your little children on the streets and highways, I appeal to you to stop this reckless driving of automobiles that you see from time to time on the streets by making an example of this defendant, by giving him the limit at hard labor in the penitentiary."

Objection was made to these remarks, and exception to the ruling of the court in permitting them was duly saved.

The argument of the prosecuting attorney, taken as a whole, was but an expression of his opinion to the effect that the evidence showed that the appellant was guilty, and a denunciation by him of the violation of the law in running automobiles in such a manner as to interfere with the rights of other people who are also entitled to use the streets. It was but an admonition to the jury to the effect that the law was being violated in the running of automobiles, that this particular instance was in violation of the law, and that it was their duty to punish such violations. It was an appeal to the jury to enforce the law in order to protect the rights of the people and the public in general. The prime object of all criminal statutes is to prevent the commission of acts that will interfere with the personal rights of others, and the purpose in punishing those who have committed such offenses is to inflict personal pain and suffering only as an example to others who may be similarly inclined in order to deter them from the commission of like offenses and thus preserve the public welfare.

The remarks of counsel do not, we believe, transcend the bounds of legitimate argument as marked out by many of the previous decisious of this court. See: *Little Rock & F. S. Ry. Co.* v. *Cavenesse,* 48 Ark. 106, 131; *Vaughan* v. *State,* 58 Ark. 368; *Holder* v. *State,* 58 Ark. 473, 481; *Kansas City, etc., Railway Company* v. *Sokal,* 61 Ark. 137; *St. Louis, I. M. & S. Ry. Co.* v. *Waren,* 65 Ark. 619, 626; *Puckett* v. *State,* 71 Ark. 62; *Butt* v. *State,* 81 Ark. 173; *James* v. *State,* 94 Ark. 514; *Blackshare* v. *State,* 94 Ark. 548; *Cravens* v. *State,* 95 Ark. 321.

4. Objection is urged here to some instructions that were given on the part of the State and to the refusal of the court to give certain instructions asked for on the part of appellant. It is sufficient to say, in answer to the contention that the court

erred in refusing to give instructions numbers three and five on the part of appellant,* that the doctrine of contributory negligence has no place in cases of this kind.    See cases in brief of the Attorney General.

We have carefully considered this assignment of error, and in our opinion the charge of the court, taken as a whole, was exceptionally free from error, the law covering every phase of the evidence in the case was fully and correctly stated, and there was evidence sufficient here to sustain the verdict of the jury.    The judgment is therefore affirmed.

---

*Instructions three and five requested by appellant were as follows:

"3. You are instructed that if the death charged to defendant in the indictment was occasioned by negligence or inattention to her own safety of deceased, and that if deceased was of sufficient age and discretion to know the danger of such a vehicle as an automobile, you must then find that defendant discovered danger to deceased, or by proper care could have discovered it while acting lawfully himself, and afterwards wantonly, recklessly and feloniously made no effort to avoid striking her."

"5. If you find from the evidence that deceased was of sufficient age and discretion to understand and appreciate the danger from a collision with an automobile in the streets and find that the collision which resulted in her death was caused by her suddenly and unexpectedly to defendant leaving the sidewalk and running into the street between crossings, where defendant had no reason to expect her, and in doing so ran into defendant's machine at a place and time that prevented his seeing her and prevented his making any effort to avoid striking her, then defendant is not guilty of manslaughter."    (Rep.)