BENSON *v.* STATE.

208 S. W. 2d 767

Opinion delivered February 16, 1948.

Rehearing denied March 15, 1948.

*K. T. Sutton,* for appellant.

*Guy E. Williams,* Attorney General and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

MINOR W. MILLWEE, Justice. The defendant was charged by information with the crime of involuntary manslaughter in the striking and killing of Bobby Wheeler with a motor truck, which was allegedly being recklessly and illegally operated by defendant while under the influence of intoxicating liquor. A jury found defendant guilty and fixed his punishment at 18 months in the penitentiary.

It is earnestly insisted that the evidence is legally insufficient to support' the verdict and that the trial court, therefore, erred in refusing to direct a verdict of not guilty at defendant's request.

It appears from the testimony that defendant was driving his brother's 1½-ton truck toward Earle, Arkansas, on the afternoon of August 21, 1947, when it struck or sideswiped a bicycle being ridden by Bobby Wheeler and Charles Barrett, 15 and 14 years of age, respectively. Bobby Wheeler was operating the bicycle and the other boy was riding on the bar that extends from the seat to that part of the frame which supports the handlebars. The collision occurred on Highway 64 about 1½ miles west of Earle, Arkansas, where the road is straight. The paved surface of the road is approximately 25 feet wide with a gravel shoulder on each side about 3½ feet wide.

Thurman McCay, who lives at Marion, Arkansas, testified that he was driving to Earle about 4:30 p. m. when he passed the truck being driven by defendant in the same direction. He observed the boys traveling on the bicycle toward Earle in front of defendant's truck. After passing the bicycle, he looked in his rearview mir-

ror and saw the truck driven by defendant continue toward the bicycle which was traveling on the right edge of the blacktop pavement and saw one of the boys go up in the air. Defendant's truck passed McCay about 200 yards beyond the place of the collision as the latter stopped to return to the scene. On reaching the scene of the collision, he saw that the Wheeler boy was seriously injured and left a companion with the two boys while he drove to Earle to call an ambulance.

He overtook defendant's truck and blocked the entrance to a side road that defendant was about to enter near the schoolhouse at Earle. He told defendant that he had better stop his truck; that he had hit two boys and that he (McCay) thought defendant had killed one of them. Defendant replied, "What boys? I didn't see any boys." McCay then drove into Earle where he called an ambulance and, on returning to the scene of the accident, observed defendant's truck parked in front of the schoolhouse. Defendant did not go to the scene of the collision, but remained in the truck. Several persons who had gathered nearby testified that defendant sat in the truck "with his head down," or that he was "bent over," or "slumped over," in the truck.

Two officers, who arrived while defendant was still seated in his truck, testified that they detected the odor of alcohol on defendant's breath. When asked what he had been drinking, defendant replied that he "had a couple of bottles of beer back at Earle awhile ago." The officers detailed other conversations had with the defendant while he was being taken to jail at Marion, and concluded that he was under the influence of intoxicating liquor. Defendant did not have a driver's license. The truck was turned over to defendant's brother who was taking a vocational agricultural course for veterans at the Earle school.

Charles Barrett testified that the bicycle was traveling straight down the right edge of the road about 1 or 1½ feet off the blacktop pavement when it was struck from the rear, and that there was no wobbling

of the bicycle at the time of the collision. The bed on defendant's truck was wider than the cab and there was a fresh indentation on the right front of the bed, or cross piece that supports the bed.

The back of Bobby Wheeler's skull was fractured and his back and hips were badly mangled. He died about 30 minutes after reaching a hospital.

The defendant testified that he was visiting his brother, who lived about five miles north of Earle, at the time of the accident; that he delivered his brother to the Earle school about 1 p. m. and drove to Wynne, Arkansas, and returned to Earle about 4:30 p. m.; that he knew nothing of the collision until McCay told him about it; that he recalled seeing two boys on a bicycle somewhere on the road. When asked if he turned to the left in passing them, he stated that he did not, but that he already had plenty of room to pass. He denied being intoxicated, but stated that he drank three bottles of beer at the home of his brother on the morning of the collision. He did not sound his horn and was unable to explain why he did not go to the assistance of the boys when McCay told him that he had hit them.

Two witnesses testified on behalf of defendant that they were traveling in a truck from Earle shortly before the accident when they met the truck driven by defendant, and that the bicycle was wobbling in the road a few feet ahead of defendant's truck as they met it. This testimony was sharply disputed by Charles Barrett, Thurman McCay and his companion, who testified that they met no other vehicle at or near the time of the collision and that the bicycle was proceeding straight down the edge of the road when it was struck by the truck driven by defendant.

The prosecution was conducted under Act 169 of 1947. Section 1 of said Act amended § 2982 of Pope's Digest to read as follows: "If the killing be in the commission of an unlawful act, without malice, and without the means calculated to produce death, or in the prosecution of a lawful act, done without due caution and

circumspection, it shall be manslaughter. *Provided further that when the death of any person ensues within one (1) year as a proximate result of injury received by the driving of any vehicle in reckless, willful or wanton disregard. of the safety of others, the person so operating such vehicle shall be deemed guilty of involuntary manslaughter."* The italicized proviso was added by the 1947 Act. Section 2 of said Act 169 amended § 2994 of Pope's Digest by changing the punishment for involuntary manslaughter from a maximum of 12 months' imprisonment in the penitentiary to a maximum of three years, or a fine of not less than $100 nor more than $1,000, or both such fine and imprisonment. The trial court instructed the jury in the language of the statute and no complaint is made in the giving of instructions.

In a prosecution for homicide resulting from the negligent operation of an automobile under § 2982 of Pope's Digest prior to the passage of Act 169, *supra,* this court held that the state was required to prove a higher degree of negligence than is ordinarily contemplated to establish liability in a civil action. *Phillips v. State,* 204 Ark. 205, 161 S. W. 2d 747.

By § 6707 of Pope's Digest, as amended by Act 194 of 1943, it is made unlawful for any person to drive a vehicle while under the influence of intoxicating liquor. Under § § 6694 and 6696 of Pope's Digest the driver of a vehicle involved in an accident resulting in injury or death to any person is required to return to the scene of the accident and render reasonable aid and assistance to the injured party. Such statutes have as their purposes the prevention of accidents and the preservation of persons from injury on the highways. *White v. State,* 164 Ark. 517, 262 S. W. 338.

Defendant argues that, since the front of the truck did not strike the bicycle, it is more reasonable to believe from the testimony that the two boys were riding in a reckless manner and that the bicycle wobbled against the truck as it passed them; and that the state's case rests entirely on speculation. The jurors were the

judges of the credibility of the witnesses on the issue of whether the bicycle wobbled into the side of the truck or defendant recklessly sideswiped the bicycle with the truck while he was operating it under the influence of intoxicating liquor. In testing the legal sufficiency of the evidence to support the verdict, it must be viewed. in the light most favorable to the state. When so considered, the jury was warranted in concluding that the reckless operation of the truck by defendant while under the influence of intoxicants was the direct and proximate cause of the death of Bobby Wheeler. This inference is strengthened by the manifest indifference to the fate of the two boys which defendant apparently displayed in failing to return to the collision scene, or render assistance, upon learning of the collision, in violation of a duty imposed upon him by statute. We conclude, therefore, that the evidence is sufficient to support the conviction for involuntary manslaughter. *White* v. *State, supra; Bennett* v. *State,* 161 Ark. 496, 257 S. W. 372; *Nichols* v. *State,* 187 Ark. 999, 63 S. W. 2d 655; *Martin* v. *State,* 206 Ark. 151, 174 S. W. 2d 242.

It is also argued that the boys riding the bicycle were guilty of negligence which contributed to the injury and death of Bobby Wheeler. The doctrine of contributory negligence recognized in civil actions is inapplicable here. In 5 Am. Jur., Automobiles, § 796, it is said: ''The familiar rule that contributory negligence of the person injured or killed by the negligence of the defendant in the operation of an automobile bars a recovery in a civil action has no application to a prosecution for homicide due to criminal negligence in operating an automobile. In such case, the decedent's behavior may have a material bearing upon the question of the defendant's guilt,. but if the culpable negligence of the latter is found to be the cause of the death, he is criminally responsible whether the decedent's failure to use due care contributed to the injury or not.'' This rule was approved by this court as early as 1911 in the case of *Bowen* v. *State,* 100 Ark. 232, 140 S. W. 28.

We find no error and the judgment is, therefore, affirmed.