Appellant was tried on an information charging him with the crime of manslaughter (2980, et seq., Pope's Digest). He was convicted of involuntary manslaughter[1] (2982, Pope's Digest *Page 220 
as amended by Act 169 of 1947), and sentenced to three years in the penitentiary. By timely exceptions, and by proper assignments in his motion for new trial, he makes the contentions hereinafter discussed.
I. Motion to Quash the Information. This is assignment No. 4 in the motion for new trial. Appellant was tried on an information filed by the prosecuting attorney, rather than on an indictment returned by a grand jury; and appellant claims that prosecuting him by information is violative of his rights under both the State and Federal Constitutions. Amendment 21 of the State Constitution reads:
"That all offenses heretofore required to be prosecuted by indictment may be prosecuted either by indictment by a grand jury or information filed by the prosecuting attorney."
This amendment has been upheld by this court against such attack as is here made, in numerous cases, some of which are: Penton v. State, 194 Ark. 503,109 S.W.2d 131 and Smith et al. v. State, 194 Ark. 1041,110 S.W.2d 24. The United States Supreme Court has repeatedly held that a State can — if it so desires — provide for a prosecution by information instead of by indictment. Some of these cases are: Hurtado v. California, 110 U.S. 516,28 L.Ed. 232, 4 S.Ct. 111; Bolln v. Nebraska,176 U.S. 83, 44 L.Ed. 382, 20 S.Ct. 287; and Gaines v. Washington,277 U.S. 81, 72 L.Ed. 793, 48 S.Ct. 468. Appellant quotes from, and relies on, the dissenting opinion of Mr. Justice BLACK in Adamson v. California (decided June 23, 1947), 332 U.S. 46, 91 L.Ed. 1903,67 S.Ct. 1672. But we must follow the majority in that case, rather than the minority. We therefore conclude that the trial court was correct in refusing to quash the information.
II. Motion to Quash the Panel of Petit Jurors. This topic embraces assignments Nos. 5 and 6 in the motion for new trial. Appellant filed a motion of eight numbered paragraphs seeking to quash the entire panel of petit jurors. The prayer of that motion was: *Page 221 
"Wherefore, the petitioner further states that while white electors are regularly selected to serve as regular members of the Petit Jury Panel at each term of the Jefferson Circuit Court, no Negroes have been selected and that said Negro electors have been systematically excluded from serving as regular members of the Petit Jury Panel in said Jefferson County Circuit Court for a half century solely because they are Negroes. The defendant charges that this constitutes a discrimination against him, a Negro, and such discrimination is a denial to him of equal protection of the laws of the United States of America as guaranteed by Section One of the Fourteenth Amendment to the Constitution of the United States of America. Petitioner further alleges that due process of law is being denied him by the State of Arkansas, through its Administrative Officers, and prays that present Petit Jury Panel be quashed."
We group and discuss appellant's arguments under this assignment:
A. Systematic Exclusion. In support of his motion, appellant introduced United States census figures of 1940,[2] which showed the population of Jefferson county in that year to have been a total of 65,101, classified by the Census Bureau as follows:
 Native-born white ................... 28,696 Foreign-born white .................. 383 Negroes ............................. 35,980 Other races ......................... 42 _______ Total ............................ 65,101
It was testified that there were 11,400 qualified electors in Jefferson county in 1947, of which approximately 3,000 were Negroes; and it was shown that there had been no Negroes on trial juries in Jefferson county for a period of 30 years prior to the March, 1947, adjourned term.
Under this evidence appellant urges that there was a systematic exclusion of Negroes from jury service at *Page 222 
the time of the trial of this case (which was on October 10, 1947, a regular day of the regular October, 1947, term). The evidence offered by appellant was obviously in anticipation of the holding of the U.S. Supreme Court in the case of Patton v. Mississippi, decided December 8, 1947, 332 U.S. 463, 92 L.Ed.,* 68 S.Ct. 184. In that case the U.S. L.Ed. headnote summarizes the opinion in this language:
"Where, in a county the adult population of which is more than 35% Negro, no Negro has served on a grand or petit criminal court jury for 30 years, the inference of systematic exclusion is not sufficiently repelled by showing that a relatively small number of Negroes meets a requirement that a juror must be a qualified elector."
In the Patton case it was shown that Negroes were not called for jury service at the time of Patton's trial; but in the case at bar the record reflects that Negroes were selected for jury service at a special term of the Jefferson Circuit court in March, 1947, and again at the regular term of the court in October, 1947, from which last-mentioned term comes this appeal. Thus, at the two most recent terms, including the one in which appellant's trial occurred, Negroes were selected for jury service. So, any alleged systematic exclusion of previous years certainly had been abandoned at the time of the trial of this case — and this abandonment was no doubt in keeping with the holding of the U.S. Supreme Court in Hill v. Texas, 316 U.S. 400, 86 L.Ed. 1559,62 S.Ct. 1159. That case referred to grand juries, but — a fortiori — is also germane to petit juries. So, we hold that the evidence here sufficiently repels any inference of present systematic exclusion, since Negroes are now called for jury service.
B. Studied Evasion. Appellant insists that only three Negroes were selected on the panel of petit jurors at the October, 1947, term; and insists that this was a studied evasion. He says:
"Appellant believes that the mere placing of three Negroes on the panel as alternates is proof enough of a *Page 223 
method or common understanding of administrative officers (and) constitutes a would-be legalized manner in which to continue the systematic exclusion of Negroes from jury service."
But the proof in this record shows that the three Negroes were members of the regular panel of petit jurors called in the present case. They were V. T. Price, R. D. Doggett and Prince Swaizer. They were members of the regular panel, and numbered 7, 10 and 12 in the examination of jurors for trial in this case. There is no evidence even tending to show that the jury commissioners selected these three Negroes or any other members of the jury panel for any purpose other than to truly comply with the law of the land.
The fact that the jury commissioners selected Negroes for the panel satisfies the burden placed on the State under the holding in Patton v. Mississippi, supra: and the burden then devolved on the appellant to show that the jury commissioners practiced "evasion." There is no such proof in the record. The jury commissioners were not called to testify, yet it was shown that they had selected other lists from which some of the additional jurors were called after the regular panel had been exhausted.
Appellant says in his brief:
"Appellant prays the earnest consideration of this court for an announcement of policy as to what constitutes compliance with the constitutional provision that a person has a right to trial by an impartial jury. Does the mere presence of three Negroes on the panel constitute due process where they have been designated by the jury commissioners as alternates?"
The language of the U.S. Supreme Court in the case of Akins v. Texas, 325 U.S. 398, 89 L.Ed. 1692.65 S.Ct. 1276, is an answer to appellant's question. This is the language:
"Petitioner's sole objection to the grand jury is that `the commissioners deliberately, intentionally and purposely *Page 224 
limited the number of the Negro race that should be selected on said grand jury panel to one member.' Fairness in selection has never been held to require proportional representation of races upon a jury. Virginia v. Rives, 100 U.S. 313, 25 L.Ed. 667; Thomas v. Texas, 212 U.S. 278, 53 L.Ed. 512, 29 S.Ct. 393. Purposeful discrimination is not sustained by a showing that on a single grand jury the number of members of one race is less than that race's proportion of the eligible individuals. The number of our races and nationalities stands in the way of evolution of such a conception of due process or equal protection. Defendants under our criminal statutes are not entitled to demand representatives of their racial inheritance upon juries before whom they are tried. But such defendants are entitled to require that those who are trusted with jury selection shall not pursue a course of conduct which results in discrimination `in the selection of jurors on racial grounds.' Hill v. Texas, supra, (316 U.S. 404, 86 L.Ed. 1562,62 S.Ct. 1159). Our directions that indictments be quashed when Negroes, although numerous in the community, were excluded from grand jury lists have been based on the theory that their continual exclusion indicated discrimination and not on the theory that racial groups must be recognized. Norris v. Alabama, 294 U.S. 587,79 L.Ed. 1074, 55 S.Ct. 579; Hill v. Texas, 316 U.S. 400,86 L.Ed. 1559, 62 S.Ct. 1159, and Smith v. Texas, 311 U.S. 128,85 L.Ed. 84, 61 S.Ct. 164, 211 supra. The mere fact of inequality in the number selected does not in itself show discrimination."
The record here contains the voir dire of each member of the panel from which the jury was selected to try this case. The voir dire examination is set out on pages 38 to 82 of the transcript. In all, 26 prospective jurors were interrogated on the voir dire. Two were excused for cause; seven were excused by appellant; five were excused by the State; and the remaining 12 were selected as jurors. Under 3997, Pope's Digest, appellant had eight peremptory challenges, and the State had six. Thus, neither the State nor the appellant exhausted the peremptory challenges allowed by law. Appellant is in no *Page 225 
position to complain of the selection of any juror, because appellant was not required to take any juror he did not desire. He announced his contentment with the jury without exhausting all of his peremptory challenges. See, also, State v. Koritz, 227 N.C. 552,43 S.E.2d 77, wherein certiorari was denied by the U.S. Supreme Court on October 13, 1947, 332 U.S. 768, 92 L.Ed.,*68 S.Ct. 80. Every juror accepted on the trial jury in this case was accepted by appellant. He did not exhaust his challenges, and has made no showing that the jury commissioners selected other than fair jurors. In the absence of any such showing, we hold that the trial court was correct in refusing appellant's motion to quash the panel of petit jurors.
III. Sufficiency of the Evidence. Assignments numbered 1 to 3, inclusive, in the motion for new trial present this issue, wherein appellant challenges the sufficiency of the evidence to sustain the conviction. Appellant was tried for the homicide of Mrs. Margaret Hill. The evidence showed that on the night of August 23, 1947, Mr. and Mrs. Hill (the deceased) with their baby, and accompanied by Mr. and Mrs. Orville Estes and their children, were in the Hill car en route to See Mr. Hill's sister, who lived in Jefferson county. Mr. Hill stopped his car well over on the side of the highway, and started towards a farmhouse to inquire directions. At that moment appellant, driving a car down the highway at a rate of speed estimated to be between 70 and 75 miles per hour, and "zigzagging across the road," approached the Hill car. Mr. Hill and Mr. and Mrs. Estes all testified that they thought that appellant was about to collide with the Hill car. The deceased evidently had of the same opinion; for — holding her baby in her arms — she jumped from the car and started across the road to what she apparently thought would be a place of safety. But just at that instant appellant swerved his car toward her, struck Mrs. Hill and the baby, and dragged them about 75 or 100 yards before they were thrown clear of the car. Mrs. Hill's skull was crushed, and she lived only a few minutes. *Page 226 
Appellant did not stop; he drove into and out of a wooded ditch and down the road nearly two miles, where he abandoned his car in the middle of the highway, and then proceeded to his father's home in Lonoke county. There, he was arrested the following day. Appellant admitted to the officers (and they so testified) that he was driving the car that struck and killed Mrs. Hill. This evidence offered by the State (and the appellant offered none) was sufficient to sustain the verdict of involuntary manslaughter, under Act 169 of the Acts of 1947, which amended 2982, Pope's Digest, and also provided the punishment for involuntary manslaughter. For cases where a homicide occasioned by the driving of an automobile has been held to be involuntary manslaughter, see Bowen v. State, 100 Ark. 232, 140 S.W. 28; Madding v. State, 118 Ark. 506, 177 S.W. 410; White v. State, 164 Ark. 517, 262 S.W. 338; Craig v. State,196 Ark. 761, 120 S.W.2d 23; Phillips v. State, 204 Ark. 205,161 S.W.2d 747; Fitzhugh v. State, 207 Ark. 117,179 S.W.2d 173; and Benson v. State, 212 Ark. 905,208 S.W.2d 767. We therefore hold that the evidence was amply sufficient to sustain the verdict.
IV. Other Assignments. As previously stated, the motion for new trial contained 17 assignments of error. Those heretofore discussed are the only ones urged by appellant in his brief in this court; but we have studied all 17 assignments and find no error. Those hereinbefore considered are assignments numbered 1 to 6, inclusive; those not heretofore discussed, but now disposed of, are:
Assignment No. 7 related to a ruling by the court concerning a juror. The court held the juror to be competent, and appellant excused him. Since appellant did not exhaust his peremptory challenges — as heretofore mentioned — he cannot urge this assignment. See Mabry v. State, 50 Ark. 492, 8 S.W. 823; York v. State, 91 Ark. 582121 S.W. 1076, 18 Ann. Cas. 344; and Shoop v. State,209 Ark. 498, 190 S.W.2d 988.
Assignment No. 8 related to the court's ruling in allowing the State to introduce in evidence pieces of appellant's *Page 227 
car found at the scene of the impact and in the ditch where appellant drove the car before returning to the highway. The pieces of the car were properly identified, so there was no error in admitting this evidence. See Barber v. State, 182 Ark. 738, 32 S.W.2d 619
and cases collected in West's Arkansas Digest "Criminal Law," 404(3).
Assignments Nos. 9 to 17, inclusive, related to instructions given by the court. A careful review of these instructions discloses no error.
The judgment of the circuit court is in all things affirmed.
[1] Involuntary manslaughter, being a lesser degree of manslaughter, was necessarily included in the offense charged in the Information (4047, Pope's Digest).
[2] These were the census figures in 1940. No effort was made to show the population in 1947.
* Page not accessible at time of going to press.
* Page not available at time of going to press.