ELMER WALKER *v.* STATE OF ARKANSAS

5214                                          408 S. W. 2d 474

Opinion delivered November 14, 1966
[Rehearing denied December 5, 1966.]

*S. C. Ferguson,* for appellant.

*Bruce Bennett,* Attorney General; *James C. Wood,*
Asst. Atty. Gen., for appellee.

ED. F. McFADDIN, Justice. Appellant was convicted
of driving while under the influence of intoxicating liq-
uor (Ark. Stat. Ann. § 75-1027 [Repl. 1957]). There
was evidence offered that this was the second offense
within the year; and he was fined $250.00 and sentenced
to ten days in jail (Ark. Stat. Ann. § 75-1029 [Repl.
1957]).[1] From such judgment there is this appeal, urg-
ing the points which we will now discuss.

I. *Location Of The Court.* Appellant claims that
the Circuit Court of Sharp County could legally be in

_____
[1]The statute also requires the revocation of driving license for
such second offense within one year. This point is not before us.

session only at Ash Flat, and that his trial in Hardy was therefore void. We find no merit in this point. The same argument about the location of the Sharp Circuit Court was made and answered in the recent case of *Don Warren* v. *State* (No. 5219), 241 Ark. 264, 407 S. W. 2d 724 (opinion delivered October 24, 1966); and reference is hereby made to that opinion for a full answer of appellant's contention.

II. *Evidence Of Intoxication.* Appellant was charged with violating Ark. Stat. Ann. § 75-1027, and that statute reads:

> "It is unlawful and punishable . . . for any person who is under the influence of intoxicating liquor to drive or be in actual control of any vehicle within this State."

The person must be "under the influence of intoxicating liquor"; but a person does not have to be maudlin drunk to be "under the influence."[2]

Officer Porter, a State policeman, testified as regards the condition of the appellant, Walker:

> "Q. State to the jury what you found when you went up there?
>
> "A. I found Mr. Walker behind the wheel and I asked him to get out of the car and he did.
>
> "Q. Will you state to the jury, the manner in which he acted?
>
> "A. He was very slow to react to what I told him. I told him to get out two or three times and he just sat there and looked at me.

---

[2] In 142 A. L. R. 555 there is an annotation entitled: "Degree or nature of intoxication for purposes of statute or ordinance making it a criminal offense to operate an automobile while in that condition."

"Q.  All right, sir. Did you have a chance to observe his condition?

"A.  Yes, I did.

"Q.  State to the jury what facts you found?

"A.  He had the odor of alcohol in his person and was very unsteady on his feet. It was quite obvious that he was drunk.

"Q.  Did you have any conversation with him?

"A.  Some, yes, sir.

"Q.  Tell the jury what his manner of speech was —were his words coherent?

"A.  No, it was incoherent. Nothing he said made any sense. He would start talking about one thing and break off in the middle of it and start on something else."

The above quoted testimony made a jury question as to whether appellant was "under the influence of intoxicating liquor"; and we find no merit in appellant's contention to the contrary.

III. *Evidence Of Previous Conviction Within The Year.* The offense for which appellant was on trial in this case occurred on September 12, 1965, and the State called Justice of the Peace Claude Huffmaster who testified that appellant had pleaded guilty to driving while under the influence of intoxicating liquor on August 13, 1965. The Justice of the Peace had the original of the court proceedings of August 13, 1965, written on a note paper and said that he had not yet transcribed the note paper into his docket. Appellant insists that a Justice of the Peace record on note paper is no record at all and that such testimony should have been totally disregarded. We find this contention to be without merit. In *Price* v. *Shope,* 212 Ark. 420, 206 S. W. 2d 752, we held that a Justice of the Peace judgment written on note paper was valid.

IV. *Operation Of The Vehicle.* It is inferentially claimed by the appellant that the evidence of the State was insufficient because the appellant was not *driving a car with the motor running at the time of his arrest.* The evidence shows that appellant was in the driver's seat of the vehicle, that the motor was not running, and that the car was being pushed down the highway by another vehicle. The statute under which the appellant was being tried, as previously quoted, says that he must be "in actual control of any vehicle." Certainly the appellant was in control of the car while he was in the driver's seat and the car was being pushed on the highway.[3] The Supreme Court of Missouri in *State* v. *Edmondson,* 371 S. W. 2d 273, held that one steering an automobile being pushed by another car on a public street was operating and controlling the vehicle.

Finding no error, the judgment is affirmed.

[3] In 47 A. L. R. 2d 570 there is an annotation entitled: "What constitutes driving, being in control of, or operating a motor vehicle within statute making such act, while intoxicated, an offense."