Charles Franklin ROGERS *v.* STATE of Arkansas

CA CR 05-491                                      224 S.W.3d 564

Court of Appeals of Arkansas
Opinion delivered January 25, 2006

*Bramhall Law Firm*, by: *Thomas M. Bramhall*, and *Greenhaw & Greenhaw*, by: *John F. Greenhaw*, for appellant.

*Mike Beebe*, Ark. Att'y Gen., by: *David J. Davies*, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Charles Rogers appeals his conviction for driving while intoxicated as entered by the Washington County Circuit Court after a bench trial. Appellant contends on appeal that the conviction is not supported by sufficient evidence that he was in actual physical control of the vehicle under Arkansas law. We agree, mandating that we reverse the conviction.

The facts are not in material dispute. Appellant agrees he was intoxicated when two Fayetteville police officers found him asleep or passed out in his vehicle, a Cadillac Escalade, in the driver's seat. The vehicle was parked outside an Elk's lodge at about 2:00 a.m. on January 7, 2004, in Fayetteville, Arkansas. The vehicle's engine was running with exhaust visible from the tailpipe; the headlights and taillights were on. It was a very cold night, well below freezing. Officers tapped on the window, and with some persistence eventually aroused appellant from sleep. Appellant's foot appeared to the officers to be on the brake pedal. Appellant turned the vehicle off and exited to speak to the officers. The officers testified that the vehicle keys were recovered from the front passenger area of the vehicle, although the officers could not recall where. The officers denied knowing anything about how remote-start worked.

Appellant testified that he had been driven back to his vehicle by a friend and had started the engine of his vehicle by pressing a remote-start button. He stated that after his vehicle had warmed for a few minutes, he promised his friend that he would enter his Escalade and sleep until he was safe to drive. Appellant testified that once he entered his Escalade, the keys were never in the ignition but rather were on the floorboard.

Appellant had the electronics technician who installed the remote-start testify on his behalf. The technician stated that the only way to turn off the engine after being remotely started is by pushing the remote button again or pressing the brake pedal. He said that remote-start turns on the head and tail lights, and any accessories are available to use, such as the radio, the heat and air conditioning, and the like.

The technician reviewed the videotape of the police encounter taken by the patrol car's mounted camera.[1] The technician stated that the tape showed that the brake lights were not on because, if they were, a third brake light would be activated in the back window. Instead, only the head and tail lights were on. Furthermore, had the brake pedal been depressed, the vehicle's engine and accessories would have stopped. The technician stated that the tape showed that when appellant was encountered by the police officers, appellant reached down to the floorboard at appellant's left foot to grab the key ring and then pushed the button on the key fob to turn off remote-start. The technician explained that when in remote-start, one cannot drive the vehicle because the steering is locked and the gear shift is locked. The only way to actually move it is to put the keys into the ignition and turn the ignition to the run position, then brake and shift into gear.

Appellant's friend testified that he took appellant as a guest inside the Elk's lodge, where they listened to music and drank a bit. Later on that night, the friend drove appellant to Bobbisox lounge where appellant drank too much. The friend drove appellant back to the lodge, where appellant remote-started the Escalade so it would get warm. His friend said appellant promised he would not drive but would only sleep in his Escalade until he was capable of driving safely.

Appellant moved for directed verdict or dismissal at the appropriate times, arguing that pursuant to Arkansas appellate case law interpreting the DWI statute, there lacked proof that he was in "actual physical control" of the vehicle. Those motions were denied. This argument was amplified by defense counsel in closing argument, explaining that the cases required proof that the keys were in the ignition. The State argued that even if the keys were not in the ignition, the engine was running, which was a sufficient showing of control.

At the conclusion of the evidence, the trial court announced its decision. The trial court found as facts that appellant had been out with his friend drinking that night; that he started his Escalade using the remote-start button while sitting in the friend's vehicle; that some minutes later appellant entered his vehicle and sat in the driver's seat with the engine running; that when officers encountered him, appellant's foot was on the brake pedal, though not

---

[1] The videotape, in loop format, was entered into evidence without objection. The tape was provided in DVD format for our court in the addendum for appellate review.

necessarily critical to the outcome of the case; and that appellant turned off the engine by use of the remote-start button. The trial court acknowledged that prior case law had held that if the keys to a vehicle were not in the ignition, then there was not sufficient evidence of actual physical control over the vehicle for purposes of DWI. Nonetheless, the trial court stated that this set of facts was distinguishable, without explaining how, and that appellant was guilty of DWI. This appeal followed.

Pursuant to Arkansas Code Annotated section 5-65-103(a) (Supp. 2005), "[i]t is unlawful and punishable as provided in this act for any person who is intoxicated to operate or be in actual physical control of a motor vehicle." The State pursued conviction under the "actual physical control" aspect of the statute. The test for determining the sufficiency of the evidence is whether there is substantial evidence to support a verdict. *Williams v. State*, 329 Ark. 8, 946 S.W.2d 678 (1997); *Ladwig v. State*, 328 Ark. 241, 943 S.W.2d 571 (1997). Substantial evidence is direct or circumstantial evidence that is forceful enough to compel a conclusion one way or another and which goes beyond mere speculation or conjecture. *Williams, supra; Ladwig, supra.* In making this determination, we review the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Williams, supra; Ladwig, supra.*

■ Viewing the evidence in the light most favorable to the State, there is no evidence that the keys were in the ignition, nor did the trial court find such to be the case. The Omnibus DWI Act of 1983, from which the DWI statute came, was enacted because the legislature declared "that the act of driving a motor vehicle while under the influence...constitutes a serious and immediate threat to the safety of all citizens of this State[.]" The Emergency Clause to Act 549 of 1983. The purpose of Arkansas laws against driving while intoxicated is to prevent accidents and protect persons from injury. *See, e.g., Benson v. State*, 212 Ark. 905, 208 S.W.2d 767 (1948). The case law developed in this area makes clear that if a person does not place the keys in the ignition, then this scenario falls short of the proof necessary to establish actual physical control of the vehicle for purposes of DWI.[2] Whether this

---

[2] This case does not analyze the law as it applies to the portion of the statute that concerns "operation" of a motor vehicle.

demarcation line is reasonable or effective in attaining the purpose of ensuring public safety is not for our court to decide. It is, however, the law in Arkansas. The case law argued by both sides in this case are considered herein.

In *Stephenson v. City of Fort Smith*, 71 Ark. App. 190, 36 S.W.3d 754 (2000), Stephenson was found by police asleep in the parked vehicle, the motor was not running, and the keys were on the dashboard. We held that this was not "actual physical control" of the vehicle for purposes of DWI statute, citing to *Dowell v. State*, 283 Ark. 161, 671 S.W.2d 740 (1984). In *Dowell*, our supreme court held that the appellant was not in actual physical control where he was found asleep in his automobile, which was parked with motor not running, in a driveway of a business near the highway, with keys in the seat of the vehicle by his side. In *Wiyott v. State*, 284 Ark. 399, 683 S.W.2d 220 (1985), Wiyott was found asleep behind the wheel of his car with the keys in the ignition, and when awakened by the police, Wiyott tried to start his car. Our supreme court held that this was sufficient evidence of actual physical control. The *Wiyott* case explained that the control contemplated meant more than the ability to stop an automobile, but meant the ability to keep from starting, to hold in subjection, to exercise directing influence over, and the authority to manage. As interpreted thus far by our supreme court and applied by our court, the issue of actual physical control has not turned on whether the defendant is awake when observed, whether the defendant is behind the wheel, or whether the engine is running. The supreme court in *Dowell* set out a bright-line rule that actual physical control begins when the keys are located in the ignition.

In the present appeal, the State did not prove that the keys were in the ignition. The trial court did not find that the keys were in the ignition, nor did any evidence show that the keys were in the ignition. Rather, the trial court accepted appellant's version of events as true. The State did not counter appellant's evidence that the car was not moveable unless and until the keys were placed in the ignition, nor do the dissenting judges disagree with that assertion. Criminal statutes are to be construed strictly in favor of the accused, and we are powerless to declare an act to come within the criminal laws by implication. *Dowell v. State, supra.* In this instance, the State failed to present sufficient evidence that appellant was a menace to public safety, as the statutory language "actual

physical control" has been interpreted by our appellate courts.[3] Therefore, the conviction is not supported by sufficient evidence of an essential element and must be reversed.

Reversed.

CRABTREE, BAKER, and ROAF, JJ., agree.

BIRD and GRIFFEN, JJ., dissent.

SAM BIRD, Judge, dissenting. I respectfully disagree with the majority's conclusion that the evidence was not sufficient to show that appellant, Charles Rogers, was in actual physical control of his vehicle within the meaning of our DWI statute. I believe that the evidence was sufficient, and I would affirm Rogers's conviction for fourth-offense DWI.

The majority relies on *Dowell v. State*, 283 Ark. 161, 671 S.W.2d 740 (1984), in which our supreme court held that where the intoxicated occupant of an automobile was found to be asleep or passed out behind the steering wheel of an automobile without the key in the automobile's ignition and with the motor not running, there was insufficient evidence to support the trial court's finding that he was in the actual physical control of the automobile within the DWI statute. The majority also cites *Stephenson v. City of Fort Smith*, 71 Ark. App. 190, 36 S.W.3d 754 (2000), which contains a similar holding by this court. However, in neither *Dowell, supra,* nor *Stephenson, supra,* was there evidence that the automobiles involved were susceptible of being started except by inserting and turning a traditional key in the automobile's ignition switches.

I do not disagree with the holdings of the *Dowell* and *Stephenson* cases. I simply question their applicability in the case at bar, where the evidence is undisputed that: (1) at the time of his arrest, Rogers's automobile was equipped with an "auto-start" device that eliminated the need for a traditional key to start or stop the engine, or to operate the accessories of his automobile; (2) Rogers admittedly started the engine of his automobile with the

---

[3] We can envision a multitude of scenarios that would subject a person criminally liable under the DWI statute pursuant to the dissenting judges' interpretations that expand the definition of actual physical control beyond its stated purpose. We instead adhere to "actual physical control" as defined by our supreme court so as to avoid an interpretation that leads to absurd results.

use of the auto-start device; (3) the engine of the automobile was running and the headlights, taillights, and heater were on as the police officers approached his automobile; (4) Rogers was sitting intoxicated in the driver's seat of his automobile; and (5) when Rogers was awakened by an officer, he used the auto-start device to turn off the motor of his automobile.

Our case law clearly recognizes that evidence that an intoxicated person is asleep or passed out in the front seat of a vehicle with the lights on and the motor running is sufficient to show that the person is in control of a vehicle. *See Diehl v. State*, 63 Ark. App. 190, 975 S.W.2d 878 (1998) (affirming DWI conviction where appellant was slumped over on the driver's side with the key in the ignition and the engine running); *Hodge v. State*, 27 Ark. App. 93, 766 S.W.2d 619 (1989) (affirming DWI conviction where appellant was lying on the front seat with the key in the ignition and the motor running); *Blakemore v. State*, 25 Ark. App. 335, 758 S.W.2d 425 (1988) (affirming DWI conviction where appellant was asleep in the front seat with the key in the ignition and the motor running). Although I agree that there was evidence in these cases that the keys to the automobiles were in the ignitions at the time of the arrests, the location of the keys was merely incidental to the fact that the cars were running. There was no evidence that any of the automobiles was equipped with an auto-start device that eliminated the need for a traditional key to start the automobile's engine. In other words, unlike the case at bar, for the engines to have been running in *Diehl, supra, Hodge, supra,* and *Blakemore, supra,* the keys *had* to have been in the ignitions. Thus, the import of those cases is not that the keys were in the ignitions, but that the engines of the automobiles were running.

In *Wiyott v. State*, 284 Ark. 399, 402, 683 S.W.2d 220, 222 (1985), our supreme court, in discussing the degree of "control" necessary to bring an automobile's occupant within the gamut of the DWI statute, quoted with approval from the Oklahoma case of *Hughes v. State*, 535 P.2d 1023 (Okla. Crim. App. 1975), wherein the Oklahoma court said, "[T]he control contemplated meant more than the 'ability to stop an automobile,' but meant the 'ability to keep from starting,' 'to hold in subjection,' 'to exercise directing influence over,' and 'the authority to manage.' " In *Wiyott* our supreme court then went on to say, "[T]he evidence would support the finding that the appellant was exercising direct influence over his vehicle and had the authority to manage it. At any moment he could have awakened and started his vehicle." 284

Ark. at 402, 683 S.W.2d at 222. Thus, the *Wiyott* decision did not turn on whether the key was in the automobile's ignition but, rather, whether Wiyott had the authority to exercise directing influence over the management of his automobile. Likewise, in *Hodge, supra*, this court said that "[t]he object of [DWI] legislation is to prevent intoxicated persons from not only driving on the highways, but also from having such control over a motor vehicle that they may become a menace to the public at any moment by driving it." 27 Ark. App. at 96, 766 S.W.2d at 620.

The technician who installed the auto-start device in Rogers's car testified that when started with auto-start, the automobile's radio and heater become "active" and, thus, susceptible to the normal control of the driver. He also testified that when the automobile's engine is ignited with auto-start, the car could be driven away by turning the key to the "on" position, pressing the brake, and putting the transmission in gear. Rogers himself testified that his purpose in using the auto-start was to warm up his automobile so he could sit in it until he was sober enough to drive home. In my opinion, a person who has the power to start and stop his automobile's engine by the pushing of a remote button, and the power to operate his automobile's heater, radio, and other accessories is a person who is exercising direct influence over the operation and management of his vehicle. As the supreme court said in *Wiyott, supra*, "control" within the meaning of our DWI law means more than simply the ability to stop and start one's automobile.

The majority concludes that in *Dowell*, "the supreme court has set out a bright-line rule that actual physical control begins when the keys are located in the ignition."[1] This might have been true in 1982 when Dowell was arrested, because in 1982 an automobile was started by placing the key in its ignition at the "off" position, twisting the key past the "on" position to the "start" position, and holding the key in the "start" position long enough for the automobile's engine to ignite. The 1982 driver could then press the brake pedal, place the automobile in gear, and drive away. However, in 2004, when Rogers was arrested, the engine in his Cadillac Escalade could have been ignited with the

---

[1] One logical extension of the majority's analysis would be that if a drunken person lost his car keys and "hot-wired" his automobile's ignition so as to enable him to drive the car, he would not be guilty of DWI because there was no key in the ignition. Of course, the same could be said of a drunken thief who hot-wired a stolen car because he had no key.

simple press of a remotely-located button. At that point, Rogers could have inserted his key in the ignition at its "off" position, turned the key to the "on" position, pressed the brake pedal, put the automobile in gear, and driven away. Having already started his engine with auto-start, Rogers could have skipped the twisting of the key to the "start" position because the automobile's engine was already running.

Comparing these two automobile-starting techniques, it is clear to me that it would be just as easy, if not easier, for a drunken person to wake up and drive off in an automobile that is already running as it would be to wake up and start a non-running automobile that has its key in the ignition. This is especially true if the drunken person with auto-start knows where his automobile key is located, as was the evidence in this case[2].

I do not believe that it is the public policy of Arkansas, expressed through Ark. Code Ann. § 5-65-103(a) (Repl. 1997), to simply discourage intoxicated persons from placing their keys in the ignition switches of their automobiles. Rather, I believe that it is the public policy of Arkansas to discourage intoxicated persons from placing themselves behind the steering wheels of automobiles under circumstances that permit them to exercise directing influence and management authority over their automobiles. See Wiyott, supra, and Hodge, supra. In this regard, I see no distinction between the degree of control over the operation of an automobile that is exercised by a drunken person who merely inserts his traditional key in a non-running automobile's ignition switch and the degree of control exercised by a drunken person who has in his pocket, or otherwise readily accessible to him, a device that allows him to start or stop his automobile's engine without a key in its ignition switch. The only difference is that the traditional key must be manually inserted in the ignition, whereas with auto-start, the "key" is "inserted" electronically with the push of a remote button. Either way, the automobile, with a drunk driver at the wheel, becomes a potentially lethal weapon with the twist of a key.

I do not mean to suggest by this dissenting opinion that potentially drunk drivers should be discouraged from getting into their automobiles and "sleeping it off," rather than attempting to drive after they have been drinking. Under Dowell, supra, they are

---

[2] The auto-start technician testified that Rogers's automobile key was attached to his auto-start "fob" by a chain.

still free to do this, remaining immune from prosecution for DWI, by simply leaving the engine off and the key out of the ignition, even if their automobile is equipped with auto-start.

I respectfully dissent, and I am authorized to state that Judge GRIFFEN joins in this dissent.

WENDELL L. GRIFFEN, Judge, dissenting. I join Judge Bird's dissent because I agree that appellant exercised actual physical control over his vehicle. I also agree that the cases cited by the majority, *Dowell v. State*, 283 Ark. 161, 671 S.W.2d 740 (1984), and *Stephenson v. City of Fort Smith*, 71 Ark. App. 190, 36 S.W.3d 754 (2000), do not compel reversal because whether appellant exercised actual physical control over his vehicle is not determined by merely finding that his keys were not in the ignition of his running vehicle.

I write separately to further emphasize that appellant's conduct represented precisely the type of public menace that the DWI statute is designed to prevent; that he posed just as strong a menace to the public as any drunk person passed out behind the wheel of his running vehicle with the keys in the ignition; and that the auto-start technology he had installed into his vehicle did not lessen the threat that he posed.

The purpose of the DWI statute is not only to prevent intoxicated persons from driving on the highways, but to also prevent intoxicated persons from having such control over motor vehicles that they may become a menace to the public at any moment by driving the vehicle. *Hodge v. State*, 27 Ark. App. 93, 766 S.W.2d 619 (1989). If a stone-cold drunk driver with a blood-alcohol content of nearly twice the legal limit who has his foot on the brake with the engine running while he is sitting behind the wheel of his vehicle does not pose the kind of menace that the DWI statute was enacted to prevent, I suspect that comes as a big surprise to the members of the Arkansas General Assembly who enacted the "actual physical control" aspect of the statute. I also suspect that most of the driving public believes that someone in that state who is sitting behind the wheel of a running vehicle with his foot on the brake may become a menace at any moment.

The majority opinion purports to respect the purpose of the DWI statute, yet ignores critical testimony from Officer Knotts and appellant plainly proving that appellant posed precisely the type of "public menace" the DWI statute is designed to prevent.

Appellant used his key fob to engage auto-start. He then remained in the front seat, behind the steering wheel with the engine running. Appellant kept the keys within his immediate reach, as proven by the fact that he used the key fob to turn off the vehicle when Knotts aroused him. Appellant told Knotts that he was waiting for someone to pick him up. At trial, however, appellant offered two contradictory explanations for being in his vehicle that also contradicted what he told Knotts at the scene: that he "was just going to go to sleep until the morning" and that he "just planned to sleep there until I felt like I was all right to be able to drive."

The latter intent, especially, presents the precise danger that the DWI statute was designed to prevent: that an intoxicated person, whose judgment, coordination, and reflexes are severely compromised will, to the detriment of the public, arouse from his drunken stupor and decide that he is capable of driving safely. This threat seems especially pronounced in the instant case because appellant was parked on private property, which would at some point, *require* him to move his vehicle. The threat posed by appellant, although ignored by the majority opinion, was expressly recognized by the trial judge, who noted that the DWI statute was designed to deter those who are intoxicated from "getting themselves in a situation that Mr. Rogers has put himself in intentionally."

Appellant argues as if the number of steps required to take the vehicle out of auto-start so that it can be driven normally are so insurmountable as to preclude a finding that he could easily make the vehicle operable again, and thereby precludes the danger of him becoming a public menace. This simply is not so. The person who installed the auto-start device on appellant's car testified that even if the vehicle is started using auto-start, the vehicle can be driven normally by putting the key in the ignition, then braking and shifting the car into gear. However, these are the *same steps* that would be required of *any* driver, whether that driver possessed an auto-start device or not. The only "additional" step required to operate the vehicle normally once it is in auto-start is to simply place the key in the ignition.

Auto-start technology allows a person to start a vehicle, which is a prerequisite to driving it. Drunk drivers are, by definition, drunk starters, whether they start their vehicles by auto-start or by conventional means. A driver who chooses to enjoy the benefits of auto-start remote technology has no right to

expect an exemption from prosecution for DWI when he chooses to become legally intoxicated, start his engine, and get behind the wheel of his vehicle. While we do not declare an act to come within the criminal laws by implication, affirming appellant's conviction here would no more violate that rule than affirming in any other case in which control has been found where the defendant was not actually driving the vehicle.[1]

This case clearly demonstrates that auto-start technology does not lessen the control that a driver may exercise over a vehicle. Instead, auto-start technology provides an alternative method by which a driver may exercise actual physical control over his vehicle. The evidence in this case overwhelmingly demonstrates that appellant exercised actual physical control over his vehicle and posed a threat to the public although the keys were not in his ignition. Hopefully, our supreme court will correct the misjudgment reflected by the majority opinion and, in doing so, will vindicate the public condemnation against drunk driving that the Arkansas General Assembly recognized when it enacted the "actual physical control" element of the DWI statute. In the meantime, I respectfully dissent.

I am authorized to state that Judge BIRD joins in this dissent.

---

[1] The fact that appellant's vehicle could not be driven while in auto-start mode does not preclude a finding that he was in actual physical control of his vehicle. *See Walker v. State,* 241 Ark. 396, 408 S.W.2d 474 (1966) (holding the defendant exercised actual physical control over the vehicle under the DWI statute where the defendant was steering the vehicle while someone else pushed it).